EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina del Comisionado de Seguros<br><br>Recurrida<br><br>v.<br><br>Asociación de Empleados del Estado Libre Asociado de Puerto Rico<br><br>Peticionaria | Certiorari<br><br>2007 TSPR 112<br><br>171 DPR \_\_\_\_ |

Número del Caso: AC-2006-33

Fecha: 5 de junio de 2007

Tribunal de Apelaciones:

        Región Judicial de San Juan Panel I

Juez Ponente:

        Hon. Carlos J. López Feliciano

Abogado de la Parte Peticionaria:

        Lcdo. Carlos R. Ríos Gautier
        Lcdo. Elisa Bobonis Lang
        Lcdo. María Cristina Mullan Dávila

Oficina del Procurador General:

        Lcda. Leticia Casalduc Rabell
        Procuradora General Auxiliar

Abogados de la Parte Recurrida:

        Lcda. Lizzie M. Portela
        Lcda. Brenda N. Pérez Fernández

Materia: Revisión Administrativa procedente de la Oficina del Comisionado de Seguros

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina del Comisionado
de Seguros

    Recurrida

        v.                           AC-2006-33          Apelación

Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

    Peticionaria

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 5 de junio de 2007.

La Asociación de Empleados del Estado Libre Asociado de Puerto Rico (en adelante, la Asociación) solicita la revisión de un dictamen del Tribunal de Apelaciones que confirmó las determinaciones realizadas por la Comisionada de Seguros sobre alegadas violaciones al Código de Seguros relacionadas, en su mayoría, con la reducción del monto del beneficio del Seguro por Muerte Sobreseído. Por las razones que expondremos a continuación, revocamos el dictamen recurrido.

I

Desde el año 1921, la Asociación administra un Seguro por Muerte que hasta el año 1996 estuvo

excluido de la jurisdicción de la Oficina del Comisionado de Seguros. No obstante, a partir de esa fecha la Asociación quedó sujeta a la jurisdicción y los poderes de la Oficina del Comisionado de Seguros en lo referente a sus negocios de seguros.

Actualmente, la Junta de Directores de la Asociación tiene la facultad de fijar -previa determinación actuarial- tanto las primas (cuotas) del seguro como los beneficios. Conforme a esa facultad, en el año 1970 la Junta de Directores estableció como monto del beneficio del Seguro por Muerte $15,500 y $9,500 para la primera y segunda categoría, respectivamente. Más tarde, se creó mediante legislación un Seguro por Años de Servicio y se desarrolló un fondo separado para el mismo.

En vista de que el fondo del Seguro por Muerte estaba atravesando momentos de insolvencia, el 1 de julio de 1989 la Asociación cerró el ingreso de nuevos asegurados a ese seguro, pasando entonces a conocerse como Seguro por Muerte Sobreseído. Sin embargo, la entidad mantuvo el seguro para los socios que ya estaban cubiertos por el mismo. Ante este suceso, la Asociación decidió mantener las primas del Seguro por Muerte Sobreseído en fondos separados de las primas de los otros seguros que ofrece la entidad. De esta forma, las primas de estos nuevos seguros no ingresan al fondo de reserva para pagar los beneficios del Seguro por Muerte Sobreseído en caso de necesidad.

Basándose en este panorama, en 1993 la Asociación comenzó una campaña para exhortar a los asegurados bajo el Seguro por Muerte Sobreseído a cambiarse al nuevo programa. No obstante, de un total aproximado de 80,000 asegurados, sólo unos 11,500 optaron por cambiarse.

En el año 1995, la Oficina del Comisionado de Seguros le explicó al personal de la Asociación que para aliviar la crisis del Seguro por Muerte Sobreseído no era posible reducir los beneficios de los asegurados ya acogidos al mismo. No obstante, el 10 de noviembre de 1999, la Junta de Directores de la Asociación redujo los beneficios del Seguro por Muerte Sobreseído a $8,000 y $5,000, en la primera y segunda categoría, respectivamente, basándose en un estudio actuarial preparado por el consultor Juan B. Aponte. La Asociación también pospuso el pago de las reclamaciones presentadas entre julio y noviembre de 1999 para aplicarles los nuevos valores establecidos.

En diciembre de ese mismo año, la Asociación le notificó el cambio a la Oficina del Comisionado de Seguros y ésta, al responder la comunicación, reiteró su posición original de que la reducción no se podía aplicar retroactivamente; es decir, que las reclamaciones presentadas ese año fiscal se tenían que pagar según los valores vigentes al momento del contrato. La Asociación, sin embargo, alegó falta de jurisdicción de la Oficina del Comisionado de Seguros para intervenir en el asunto.

La reducción de los beneficios provocó la presentación de múltiples solicitudes de investigación ante la Oficina del Comisionado de Seguros. Los solicitantes pretendían que se les pagaran los beneficios a base de lo que se había pagado por más de treinta (30) años, a saber, $15,500.00 en la primera categoría y $9,500.00 en la segunda. No obstante, esas solicitudes no llegaron a convertirse en querellas.

Posteriormente, en el 2003 la Oficina del Comisionado de Seguros emitió una Orden contra la Asociación imponiéndole una multa administrativa de $350,000.00 por violaciones al Código de Seguros, entre ellas, práctica injusta y engañosa por la reducción de los beneficios; falta de un contrato (póliza) que contenga los términos del acuerdo y los beneficios de los asegurados; reducción de los beneficios sin que se especificaran los términos y condiciones del cambio en un contrato; divulgación de información engañosa; aplicación de diferencias injustas entre los asegurados; falta de información a los asegurados sobre la situación financiera del seguro, y no resolver las reclamaciones dentro de los noventa (90) días que establece el Código de Seguros para ello.

En la Orden se le requirió a la Asociación restituir los beneficios del seguro a $15,500 y $9,500, lo cual –según la Asociación– implicaría un desembolso de más de $30 millones. Además, se le ordenó pagar todas las reclamaciones interpuestas con posterioridad al 1 de julio

de 1999 a razón de $15,500 para los socios asegurados en primera categoría, y $9,500 en segunda categoría, y presentar prueba sobre el cumplimiento de lo ordenado.

En junio de 2003, la Asociación solicitó el beneficio de una vista, la cual fue celebrada los días 27 y 28 de octubre de 2004 ante la presencia del oficial examinador Antonio Quiñones Rivera. Según se desprende de la transcripción de la vista, al inicio del proceso —y conociendo la práctica de la Comisionada de Seguros de no mostrar los informes de los oficiales examinadores— el representante legal de la Asociación le solicitó al oficial examinador que, una vez estuviera redactado, le mostrara el informe que recogía sus determinaciones de hechos. El oficial examinador contestó la solicitud con una advertencia de que el documento en cuestión es de uso interno y que recae en las prerrogativas de la Comisionada mostrarlo o no. Véase Transcripción de la Vista Administrativa, Ap. Págs. 842-843. Mediante mociones posteriores, la Asociación reprodujo su solicitud de que se le diera acceso al informe del oficial examinador, mas sus intentos resultaron infructuosos. De hecho, el informe aludido nunca se puso a disposición de las partes ni se hizo formar parte del expediente administrativo.

Más adelante, la Comisionada de Seguros confirmó en toda su extensión la Orden emitida por la Oficina del Comisionado de Seguros. Insatisfecha con el dictamen, la Asociación acudió en revisión ante el Tribunal de

Apelaciones. Básicamente, alegó que la Comisionada no tenía jurisdicción sobre el asunto; que la ausencia del informe del oficial examinador que presidió las vistas invalida la determinación administrativa, y que la Junta de Directores sí tiene facultad en ley para reducir el monto del Seguro por Muerte Sobreseído. El foro intermedio no acogió sus planteamientos y confirmó la determinación de la Comisionada de Seguros, pero redujo las multas impuestas a $50,000.

Inconforme aún, la Asociación acude ante nos alegando, en esencia, que erró el foro apelativo al confirmar la Resolución de la Comisionada de Seguros en ausencia del informe del oficial examinador. Aduce, además, que erró el Tribunal de Apelaciones al sostener que la Oficina del Comisionado de Seguros tiene jurisdicción sobre el Seguro por Muerte Sobreseído aun cuando está regido por otra ley y la Oficina del Comisionado de Seguros no ha promulgado reglamentación para atender sus particularidades. Finalmente, la Asociación alega que erró el foro apelativo al no concederle deferencia a la Asociación en su interpretación de la Ley Orgánica de la Asociación de Empleados del Estado Libre Asociado, Ley Núm. 133 de 28 de julio de 1966, 3 L.P.R.A. sec. 862 *et seq.*, conforme a la cual la Junta de Directores tiene facultad en ley para variar el monto del Seguro por Muerte Sobreseído, previa determinación actuarial.

Acogimos el recurso presentado como una solicitud de *certiorari*, por tratarse del recurso adecuado. La Comisionada de Seguros ha presentado su Alegato. Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

Mediante su primer señalamiento, la Asociación alega que erró el foro apelativo al validar la determinación de la Comisionada de Seguros, aun cuando el informe del oficial examinador que presidió la vista no consta en el expediente administrativo. Aduce que la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, (en adelante, L.P.A.U.) así lo requiere y que, por tanto, se debe dejar sin efecto el dictamen en cuestión. Estamos de acuerdo.

La sección 3.13 de la L.P.A.U. dispone que "[l]a vista deberá grabarse o estenografiarse, y **el funcionario que presida la misma preparará un informe** para la consideración de la agencia, o emitirá la decisión por escrito si le ha sido delegada la autoridad para ello". 3 L.P.R.A. Sec. 2163. El lenguaje no discrecional empleado en la referida disposición, demuestra que la L.P.A.U. <u>requiere</u> que se prepare un informe para la consideración del jefe de agencia, secretario o director cuando quien preside las vistas no tiene la facultad de emitir la decisión.

Por otro lado, no cabe duda que la L.P.A.U. <u>requiere</u> que ese informe se incluya en el expediente administrativo. Así surge claramente de la sección 3.18, la cual dispone

que **"[e]l expediente incluirá, pero sin limitarse a:… (h) el memorando preparado por el funcionario que presidió la vista**, junto con cualquier transcripción de todo o parte de la vista considerada antes de la disposición final del procedimiento en aquellos casos en que el funcionario que presidió la vista no tenga facultades de adjudicar". 3 L.P.R.A. sec. 2168.

Conforme a lo anterior, estamos impedidos de avalar la práctica de la Comisionada de Seguros de mantener en confidencia el informe del funcionario que escuchó a las partes y ponderó la prueba, so pretexto de que se trata de un "informe interno" mejor llamado "borrador de resolución" para beneficio de la adjudicadora[1]. Tampoco podemos endosar la pretensión de que se considere que la determinación administrativa corresponde de manera íntegra a la recomendación del oficial examinador. Todo ello contraviene las pautas claras establecidas en la L.P.A.U. y vulnera las garantías procesales reconocidas en los procesos adjudicativos ante las agencias administrativas.

A pesar de ello, la Comisionada de Seguros alega –entre otras cosas– que la falta del informe del oficial

---

[1] Antes unos hechos similares, donde la entidad adjudicativa se negó a proveer el informe del funcionario que presidió las vistas bajo el entendido de que se trataba de un informe interno, el Tribunal Supremo de Estados Unidos calificó de **anómala** la práctica a la luz de la costumbre en el ámbito judicial y administrativo federal de descubrir los informes de los oficiales examinadores y de incluirlos en el expediente para beneficio de los foros apelativos. Ballard v. Commissioner of Internal Revenue, 544 U.S. 40, 125 S. Ct. 1270, 161 L. Ed. 2d 227 (2005).

examinador en el expediente no invalida la determinación administrativa porque en estos casos basta con que se le haga al adjudicador un informe oral o cualquier otro recuento mediante el cual se logre una decisión informada. La Comisionada de Seguros fundamenta su posición en ciertas expresiones incluidas en A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875 (1974), en particular, las siguientes:

> "[e]n ausencia de requisitos específicos dispuestos por la Asamblea Legislativa, el debido proceso de ley en el trámite administrativo se cumple y satisface aun cuando no se transcriban las notas taquigráficas de la vista, ni se sometan determinaciones de hecho y conclusiones por los examinadores, ni hagan éstos un resumen o compendio escrito de la prueba para los comisionados, bastando en muchas ocasiones un informe oral de los examinadores a los miembros de la Junta o Comisión…." A.D.C.V.P. v. Tribunal Superior, supra, a la pág. 883.

Esta normativa es inaplicable a los hechos de este caso. Primero, el caso antes citado es anterior a las disposiciones de la L.P.A.U., las cuales entraron en vigor en febrero de 1989 y requieren, sin duda, que el informe del oficial examinador se haga formar parte del expediente administrativo. Segundo, debemos tener presente que en ese caso la controversia no se centró en la ausencia del informe del oficial examinador en el expediente administrativo, sino en otro asunto que –en ese momento– aún era objeto de discusión; a saber, la bifurcación del proceso decisional administrativo, donde un funcionario es quien recibe la prueba y otro es el que decide. En particular, en esa ocasión se cuestionó el riesgo de que el

adjudicador no tomase una decisión informada, mientras que aquí se cuestiona el peligro de que se limite la revisión de ese dictamen.

Finalmente, para establecer la inaplicabilidad de esa normativa a los hechos de este caso, basta con enfatizar el inicio mismo de la expresión en que se basa la Comisionada de Seguros para sustentar su negativa a incluir el informe del oficial examinador en el expediente administrativo. Nos referimos a la frase inicial donde se aclara que aquella norma prevalecerá siempre que la Asamblea Legislativa no disponga otra cosa.

Precisamente, con posterioridad a A.D.C.V.P. v. Tribunal Superior, *supra*, la Asamblea Legislativa incorporó a los procedimientos adjudicativos de las agencias administrativas unas garantías mínimas que tienen su origen en reconocidos principios del debido proceso de ley. Almonte v. Brito, 156 D.P.R. 475 (2002); Mun. de Ponce v. Junta de Planificación, 146 D.P.R. 650 (1998); Magriz v. Empresas Navieras, 143 D.P.R. 63 (1997); Torres Ramos v. Policía de P.R., 143 D.P.R. 783 (1997). A tenor con esos principios, la sección 3.1 de la L.P.A.U. ordena, entre otras cosas, que toda decisión administrativa se base exclusivamente en el expediente. Específicamente, la disposición en cuestión establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: (a) notificación oportuna de los cargos; (b) derecho a presentar evidencia; (c) derecho a

una adjudicación imparcial y (d) **derecho a que la decisión se base en el expediente**. 3 L.P.R.A. sec. 2151.

Dado que la decisión administrativa se tiene que basar en el expediente, y toda vez que la L.P.A.U. requiere que el informe del oficial examinador que presidió las vistas se haga formar parte del mismo, no cabe duda que el incumplimiento de este requisito conlleva, a su vez, el incumplimiento del deber de basar el dictamen en el expediente del caso. Esa normativa está predicada en el interés de que, al momento de hacer las determinaciones, la agencia se base exclusivamente en evidencia y materias **oficialmente admitidas**; en los materiales de que se tomó conocimiento oficial y **en todo aquello que sucedió en la vista**. Véase D. Fernández Quiñones, El Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Ed. Forum, Colombia, 2001, pág. 537. Dicha salvaguarda –en unión a las restantes pautas establecidas en la sección 3.1 –constituye, además, un medio para asegurar que el organismo administrativo tendrá ante sí todos los elementos de juicio para emitir una decisión adecuada. Mun. de Ponce v. Junta de Planificación, *supra*. Así se garantiza que el adjudicador ha ponderado todos los factores que pueden influir en su decisión, sobre todo aquello que se relaciona con la evaluación de la prueba y las adjudicaciones de credibilidad. De esa forma, se le asegura al ciudadano que la agencia ha tomado en consideración toda la evidencia desfilada y que su

participación en la vista fue realmente efectiva. Véase, en términos similares, Asoc. de Farmacias v. Depto. de Salud, res. el 5 de febrero de 2002, 2002 TSPR 13. Tal pauta es cónsona, a su vez, con el requisito de que las decisiones administrativas reflejen que el organismo ha considerado y resuelto los conflictos de prueba, y ha determinado tanto los hechos probados como los que fueron rechazados. Véase Mun. de San Juan v. Junta de Calidad Ambiental, res. el 14 de diciembre de 2000, 2000 TSPR 183; Ass. Ins. Agencies v. Comisionado de Seguros, 144 D.P.R. 425 (1996).

Por otra parte, no cabe duda que el deber de incluir el informe del oficial examinador en el expediente administrativo incide directamente sobre la revisión judicial[2]. En vista de que dicho requisito pretende salvaguardar el derecho a que la decisión administrativa se base en un record completo, lo que se afecta, en última instancia, es el derecho a la revisión judicial. Ello en vista de que "[l]a revisión judicial de la decisión administrativa se contrae y limita al record o expediente del procedimiento adjudicativo". D. Fernández Quiñones, *supra*, pág. 538. Si en el expediente administrativo no consta el documento que recoge la evaluación de la prueba

---

[2] El Tribunal Supremo de Estados Unidos se expresó a esos efectos en Ballard v. Commissioner of Internal Revenue, supra. En específico, sostuvo que "[t]he Tax Court's practice of not disclosing the special trial judge's original report, and of obscuring the Tax Court judge's mode of reviewing that report, **impedes fully informed appellate review** of the Tax Court's decision" (énfasis suplido). Ballard v. Commissioner of Internal Revenue, supra, a la pág. 59-60.

hecha por el funcionario que presidió la vista, escuchó el testimonio de los testigos y observó su *demeanor*, queda trunca la posibilidad de rebatir y cuestionar el dictamen administrativo y, por ende, se lesiona el derecho a que un tribunal de índole apelativa revise su corrección. A esos efectos, hemos resuelto que "[e]s sólo cuando la determinación administrativa se fundamenta en el expediente del caso que ha de ser resuelto que **se garantiza a las partes la oportunidad de refutar la corrección del dictamen de la agencia y la posterior revisión judicial**". Magriz v. Empresas Navieras, supra, pág. 70.

En Asociación de Farmacias v. Depto. de Salud, supra, nos expresamos en términos similares. Allí examinamos el efecto de varios incumplimientos del Departamento de Salud con los requisitos establecidos en la L.P.A.U. para el proceso de reglamentación. Uno de esos requisitos es la preparación de un informe por parte del funcionario que preside las vistas públicas, el cual debe constar en el expediente del proceso. Aun cuando se trataba de un proceso de reglamentación, expresamos que la ausencia de ese informe en el expediente correspondiente **limita severamente nuestra facultad revisora**. *Id*. Evidentemente, el rigor que se espera de los procedimientos adjudicativos es aun mayor.

De hecho, dada la importancia que le reconocemos al informe del oficial examinador, desde antes que entraran en vigor las disposiciones de la L.P.A.U. habíamos resuelto

que cuando la decisión del organismo administrativo es contraria e incompatible con dicho informe, nuestra función revisora debe tornarse más rigurosa. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987). Si hemos considerado que esos casos ameritan un examen más riguroso, ¿cómo ejercer ese examen más riguroso cuando ni siquiera existe el mencionado informe? El derecho a la revisión judicial precisa que el foro revisor conozca a cabalidad la base del dictamen administrativo. Ese propósito, claramente, no se puede alcanzar si desconocemos la impresión y evaluación hecha por quien tuvo la oportunidad de ponderar la prueba y escuchar el testimonio de las partes. No podemos asegurarnos de que el informe del oficial examinador fue evaluado por el adjudicador como se requiere, si no contamos con la posibilidad de estudiarlo durante el proceso de revisión.

Claramente, cuando avalamos la práctica de delegar en las agencias administrativas el poder de adjudicar controversias, partíamos de la premisa de que el ciudadano recibiría ciertas garantías. Dado que esas garantías mínimas están debidamente delimitadas en la L.P.A.U., no se puede decir que las agencias las desconocen y, por tanto, no existe razón para operar al margen de ellas. La alegación de la Comisionada de Seguros, a los efectos de que aquí no se requería incluir el informe en el expediente administrativo porque la controversia es de derecho, no nos convence. Establecer una norma caso a caso cuando el

requisito de la inclusión del informe en el expediente administrativo consta expresamente en una ley, no se justifica. El cumplimiento de las leyes no constituye parte de la discreción que consistentemente le hemos reconocido a las agencias administrativas.

De todas formas, conviene aclarar que en este caso existen asuntos fácticos que son objeto de controversia y que ameritan determinaciones de credibilidad de las que carecemos ante la ausencia del informe del oficial examinador en el expediente administrativo. Así, por ejemplo, conforme surge del expediente, existe controversia en cuanto a la alegación de que la Asociación le hizo falsas representaciones a los asegurados bajo el Seguro por Muerte. De la misma forma, existe controversia en cuanto a la cantidad y calidad de la orientación que se le proveyó a los asegurados para propiciar que se cambiaran a los nuevos planes de seguros. Finalmente, existe controversia sobre la naturaleza del Seguro por Muerte, toda vez que la Oficina del Comisionado de Seguros alega que se trata de un seguro de vida entero, mientras que la Asociación alega que se trata de un seguro por derrama. Todos estos aspectos fueron objeto de evidencia testifical de cuyas apreciaciones no nos hemos podido beneficiar.

De conformidad con lo anterior, resolvemos que la no inclusión del informe del oficial examinador en el expediente administrativo cuando —como en este caso— dicho funcionario no tiene la facultad de adjudicar, constituye

una violación a la L.P.A.U. que conlleva la invalidez del dictamen administrativo. Ya hemos resuelto que cualquier determinación administrativa que se haya hecho de espaldas a las pautas mínimas establecidas en la sección 3.1 de la L.P.A.U. –entre las que se encuentra el derecho a que la decisión se base en el expediente– no puede prevalecer. Mun. de Ponce v. Junta de Planificación, supra.

En vista de que este primer señalamiento de la Asociación dispone del caso en su totalidad, no atenderemos los restantes señalamientos.

## III

Por los fundamentos que anteceden, revocamos el dictamen del Tribunal de Apelaciones y, en consecuencia, dejamos sin efecto el dictamen emitido por la Comisionada de Seguros. Devolvemos el caso a la Oficina del Comisionado de Seguros para que se incluya en el expediente administrativo el informe del oficial examinador que presidió la vista administrativa. De no existir el informe, ordenamos que el funcionario que presidió la vista prepare el informe requerido y, tras evaluarlo a la luz del resto del expediente, la Comisionada de Seguros emita el dictamen correspondiente. Si no es posible la preparación de dicho informe, entonces procede la celebración de una nueva vista adjudicativa.

Se dictará sentencia de conformidad.


                                  Federico Hernández Denton
                                       Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina del Comisionado
de Seguros

    Recurrida

       v.                          AC-2006-33         Apelación

Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 5 de junio de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal de Apelaciones y, en consecuencia, se deja sin efecto el dictamen emitido por la Comisionada de Seguros. Se devuelve el caso a la Oficina del Comisionado de Seguros para que se incluya en el expediente administrativo el informe del oficial examinador que presidió la vista administrativa. De no existir el informe, se ordena que el funcionario que presidió la vista prepare el informe requerido y, tras evaluarlo a la luz del resto del expediente, la Comisionada de Seguros emita el dictamen correspondiente. Si no es posible la preparación de dicho informe, entonces procede la celebración de una nueva vista adjudicativa.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Concurrente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina del Comisionado de
Seguros
     Recurrida

       vs.                        AC-2006-033     Certiorari

Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

     Peticionaria

Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 5 de junio de 2007.

En lo más esencial del caso de autos, está en controversia un asunto de la mayor importancia para decenas de miles de asegurados bajo el Seguro por Muerte Sobreseído de la Asociación de Empleados del Estado Libre Asociado. Se trata de la **sustancial reducción** en los beneficios del seguro referido. En efecto, conforme a la determinación sobre el particular de la Junta de Directores de la Asociación de Empleados del Estado Libre Asociado, los beneficios del seguro aludido fueron reducidos en alrededor de **48%, casi la mitad de su valor**.

Esta sustancial reducción de tan importante seguro, que afecta medularmente un vital derecho de tantas personas, debe ser objeto del más riguroso

examen crítico. La determinación de la Comisionada de Seguros ordenando pagar los beneficios del seguro en cuestión conforme a las cantidades originales de éste **debe mantenerse**, salvo que existan poderosas razones que lo impidan. Por ello, es menester conocer el **informe** que aquí nos concierne. Es decir, es necesario conocer si del mismo surgen fundamentos imperiosos que justifiquen dejar sin efecto la determinación de la Comisionada de Seguros ordenando el pago de los beneficios originales del seguro aludido.

Es por lo anterior que coincido con la mayoría del Tribunal en cuanto a que se produzca el informe del oficial examinador que presidió la vista sobre los beneficios del seguro. Pero debe quedar claro que en mi criterio lo verdaderamente importante en el caso de autos no es si se cumplió o no un requisito de la L.P.A.U., sino si existen fundamentos imperiosos para revocar la crucial decisión de la Comisionada de Seguros, que fue avalada por el foro apelativo. En el fondo del caso de autos está en riesgo un derecho esencial de los asegurados, que no debe limitarse salvo que existan las razones más legítimas que lo justifiquen. No debe este Foro enfocarse en una cuestión procesal a costa del asunto mucho más medular, que es el derecho de los asegurados al pago debido, el cual la Comisionada de Seguros evidentemente ha procurado proteger de modo vehemente. Este Foro debería proceder de la misma manera.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO