EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| San Gerónimo Caribe Project, Inc.<br><br>Peticionario<br><br>v.<br><br>Administración de Reglamentos y Permisos<br><br>Recurrida<br><br>(Cons.)<br>San Gerónimo Caribe Project, Inc.<br><br>Recurrido<br><br>v.<br><br>Administración de Reglamentos y Permisos<br><br>Peticionaria | Certiorari<br><br>2008 TSPR 130<br><br>174 DPR \_\_\_\_ |

Número del Caso: CC-2008-132
          Cons. CC-2008-208


Fecha: 31 de julio de 2008

Tribunal de Apelaciones:

          Región Judicial de San Juan Panel III

Juez Ponente:

          Hon. Zadette Bajandas Vélez


Abogados de la Parte Peticionaria:

          Lcdo. Luis Sánchez Betances
          Lcdo. José A. Cuevas Segarra
          Lcdo. Adrián Sánchez Pagán
          Lcdo. José A. Cepeda Rodriguez

Oficina del Procurador General:

          Lcdo. Pedro J. Cabán Vales
          Procurador General Auxiliar

          Lcdo. Luis José Torres Asencio
          Procurador General Auxiliar

Abogados de los Interventores:

>           Lcdo. Pedro J. Varela Fernández
>           Lcda. Brenda Berríos Morales

Materia: Revisión Administrativa; Orden Emitida por ARPE

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| San Gerónimo Caribe Project, Inc. | * | |
| | * | |
| Peticionario | * | |
| | * | |
| v. | * | CC-2008-132 |
| | * | |
| Administración de Reglamentos y Permisos | * | |
| | * | |
| Recurrida | * | |

*******************************  Certiorari
(Cons.)

| | | |
|---|---|---|
| San Gerónimo Caribe Project, Inc. | * | |
| | * | |
| Recurrido | * | |
| | * | |
| v. | * | CC-2008-208 |
| | * | |
| Administración de Reglamentos y Permisos | * | |
| | * | |
| Peticionaria | * | |

*******************************

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico a 31 de julio de 2008

La presente controversia está matizada por un alto interés público y requiere de este Tribunal el más ponderado y sereno análisis jurídico, a fin de garantizar la seguridad jurídica y la estabilidad de nuestro ordenamiento legal, así como la confianza en nuestras instituciones gubernamentales, administrativas y judiciales.

Con ello en mente, debemos determinar si la Administración de Reglamentos y Permisos (ARPE) podía invocar el procedimiento de acción inmediata contemplado

en la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.) para suspender los permisos de construcción previamente otorgados a favor de San Gerónimo Caribe Project (SGCP) para el desarrollo del Proyecto Paseo Caribe y ordenar la paralización de las obras que no cuenten con un permiso de uso autorizado por la agencia.

De igual forma, nos corresponde resolver si dicha agencia tenía facultad para dejar sin efecto los permisos otorgados —a pesar de no haber alegado violaciones a las leyes o reglamentos que administra ni fraude o error en la otorgación de los permisos en controversia— basándose exclusivamente en una Opinión del Secretario de Justicia que concluyó que los terrenos en donde se construye el Proyecto Paseo Caribe son de dominio público.

Tras examinar cuidadosa y detenidamente cada una de las controversias traídas ante nuestra consideración, resolvemos que erró ARPE al desviarse del procedimiento ordinario e invocar el procedimiento de acción inmediata dispuesto en la L.P.A.U. para intervenir con los intereses propietarios de SGCP, aun cuando las circunstancias particulares de este caso no presentaban un peligro inminente a la salud, seguridad y bienestar público, ni constituían una situación extraordinaria que requiriera acción inmediata por parte del Estado.

Asimismo, concluimos que erró ARPE al suspender los permisos de construcción otorgados a SGCP a la luz de la Opinión del Secretario de Justicia, toda vez que dicha Opinión no tuvo el efecto de variar el estado de derecho

vigente al momento de ser emitida, ni dilucidó la controversia sobre la titularidad de los terrenos, tarea que corresponde exclusivamente a los tribunales y que hemos resuelto en el día de hoy en el caso San Gerónimo Caribe Project, Inc. v. E.L.A.

En vista de todo lo anterior, procedemos a revocar la sentencia emitida en el presente caso por el Tribunal de Apelaciones, así como la Orden de ARPE del 22 de febrero de 2008 que renueva la paralización de las obras de construcción.

I

El 12 de enero de 2000, luego de múltiples trámites administrativos y judiciales, la Junta de Planificación de Puerto Rico aprobó la Consulta de Ubicación Número 99-79-0155-JPU, presentada por SGCP. Mediante dicha consulta, se aprobó la ubicación del proyecto mixto residencial, comercial y turístico conocido como Paseo Caribe en la entrada de la Isleta de San Juan.

Así las cosas, luego de los trámites de rigor, el proyecto en cuestión obtuvo los permisos necesarios para comenzar la construcción a un costo aproximado de $300,000,000. Encontrándose la referida construcción en sus etapas finales, y luego que varios grupos se manifestaran públicamente en contra de la construcción del proyecto, la Comisión de Asuntos Federales y del Consumidor del Senado de Puerto Rico, mediante Resolución del Senado 2364 de 22 de junio de 2006, inició una investigación dirigida a determinar si el acceso al

Fortín San Jerónimo del Boquerón, que se encuentra en las cercanías del proyecto, estaba siendo obstruido por las obras de construcción en controversia, según alegaban los grupos opositores.

Como consecuencia de la investigación de dicha comisión senatorial, el Departamento de Justicia inició una investigación sobre "un sinfín de asuntos legales y fácticos sobre: el Proyecto Paseo Caribe; otros proyectos aledaños o relacionados al mismo; los terrenos en los cuales dichos proyectos están localizados; el proceso de concesión de permisos para todos estos proyectos; y los terrenos en los cuales el Hotel Caribe Hilton está localizado; entre otros." Véase Opinión del Secretario de Justicia del 11 de diciembre de 2007, Consulta Núm. 07-130-B., nota al calce Núm. 1, pág. 2.

A pesar de que dicha investigación no ha concluido, a la luz de unos hallazgos parciales, el 11 de diciembre de 2007, el Secretario de Justicia, Hon. Roberto Sánchez Ramos, emitió una Opinión en la que -en síntesis- concluyó que los terrenos donde se construyen parte de las obras del Proyecto Paseo Caribe son terrenos ganados al mar y, como tales, terrenos de dominio público que no pueden ser objeto de enajenación sin autorización expresa de la Asamblea Legislativa.[1] A base de lo anterior, le

---

[1] Según los alegatos de las partes, la investigación del Departamento de Justicia se inició a causa de un referido de la Comisión de Asuntos Federales y del Consumidor del Senado de Puerto Rico.

recomendó a varias agencias del Gobierno realizar una reevaluación exhaustiva de los permisos otorgados.

En lo concerniente a ARPE, la Opinión señaló que dicha agencia está facultada para revocar permisos si los mismos fueron concedidos por fraude o error, o si lo que se está construyendo es contrario a lo aprobado. **El Secretario fundamentó dicha aseveración en la Sección 19.00 del Reglamento de Procedimientos Adjudicativos de ARPE, Reglamento Núm. 6435 de 16 de abril de 2002, la cual dispone el procedimiento para la revocación de permisos.** No obstante, la propia Opinión aclaró que las entidades gubernamentales concernidas debían proceder al tenor de las leyes y reglamentos aplicables, salvaguardando siempre cualesquiera derechos procesales y sustantivos que ostenten las partes afectadas.

De conformidad con lo anterior, el 14 de diciembre de 2007 la Junta de Planificación emitió una Resolución en la que acogió las recomendaciones del Secretario de Justicia y ordenó a las partes que en un término de cinco (5) días se expresaran sobre la Opinión del Secretario de Justicia. Simultáneamente, requirió al Departamento de Recursos Naturales que en un término de cuarenta y cinco (45) días realizara un nuevo deslinde de los terrenos en controversia para que se estableciera la zona marítimo-terrestre de manera consistente con la referida Opinión. En lo pertinente al caso de autos, instruyó a ARPE a reevaluar los permisos de construcción concedidos a SGCP

y a tomar las medidas cautelares necesarias para implantar las recomendaciones del Secretario de Justicia.

Ese mismo día ARPE emitió una Orden para Mostrar Causa dirigida a SGCP. En dicho escrito, ARPE le ordenó comparecer a una vista administrativa a ser celebrada en los próximos cinco (5) días y mostrar causa por la cual no se debía dictar una orden dejando en suspenso los permisos y decretando la paralización de las obras de construcción por un término de sesenta (60) días. Como fundamento para dicha orden, la referida agencia administrativa citó la conclusión del Secretario de Justicia a los efectos de que los terrenos ganados al mar en donde radica el Proyecto Paseo Caribe son bienes de dominio público y su recomendación a varias agencias para que a raíz de dicha conclusión reevaluaran todos los endosos, evaluaciones, consultas y demás determinaciones tomadas sobre el referido proyecto.

En su orden, ARPE invocó la Sección 3.17 de la L.P.A.U., 3 L.P.R.A. sec. 2167, sobre Procedimientos Adjudicativos de Acción Inmediata. Como justificación para ello, hizo alusión a varios incidentes que, según la agencia, podían afectar la seguridad, tanto del personal del Proyecto Paseo Caribe, como de los ciudadanos que se estaban manifestando en las inmediaciones del mismo. Además, señaló que la conclusión del Secretario de Justicia a los efectos de que algunos de los terrenos ocupados por el Proyecto Paseo Caribe son de dominio público, demuestra la existencia de un alto interés

público en la reevaluación de los endosos concedidos a dicho proyecto.

Así las cosas, el 20 de diciembre de 2007 se llevó a cabo la vista señalada. Al inicio de la vista, la Oficial Examinadora aclaró que la naturaleza de la misma no era adversativa. Sobre el particular, expresó lo siguiente:

> Vamos a recopilar información de acuerdo a la Orden que se emitiera por esta Administración de Reglamentos y Permisos para que esta Agencia pueda tomar una determinación sobre la Orden de Paralización de las construcciones que se están llevando a cabo. No vamos a hablar de la validez de los permisos otorgados, y la naturaleza de la Vista como dijimos anteriormente no es adversativa.

Durante la vista, los abogados de SGCP presentaron una moción de desestimación basada en la alegada falta de jurisdicción de ARPE para dirimir la titularidad de los terrenos. Igualmente, alegaron que no se había cumplido con el debido proceso de ley.[2]

El 27 de diciembre de 2007 ARPE emitió una Resolución y Orden en la que ordenó la paralización de las obras de construcción del Proyecto Paseo Caribe que no contaran con un permiso de uso, debido a que parte de esas obras se estaban llevando a cabo en terrenos de dominio público, conforme a las conclusiones de la Opinión del Secretario de Justicia. En su Resolución, ARPE expresó que las referidas conclusiones del

---

[2] Es menester señalar que, justo el día antes de la vista, SGCP presentó una demanda de sentencia declaratoria ante el Tribunal de Primera Instancia para que se dilucidara el asunto de la titularidad, San Gerónimo Caribe Project, Inc. v. E.L.A., Civil Núm. K2AC2007-2577.

Secretario de Justicia variaron las consideraciones que tuvo la agencia para la concesión de los diferentes permisos otorgados. Por tanto, suspendió los efectos de los permisos de construcción por un término de sesenta (60) días a partir de la notificación de la orden, sujetos a ser prorrogados si el interés público así lo ameritaba.

Inconforme, SGCP recurrió ante el Tribunal de Apelaciones y solicitó que se dejara sin efecto la paralización de las obras. En síntesis, alegó que ARPE no tenía autoridad en ley para dejar sin efecto los permisos ya concedidos y que, al así hacerlo, infringió su derecho al debido proceso de ley garantizado tanto por la Constitución de Estados Unidos como por la Constitución del Estado Libre Asociado de Puerto Rico. Además, señaló que la agencia erró al descartar el mandato expreso del Artículo 104 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2354, que establece una presunción, para todos los efectos legales, que los derechos registrales existen y pertenecen al titular registral.

Por su parte, el Procurador General, en representación de ARPE, se opuso a los argumentos de SGCP y adujo que a dicha entidad no se le privó del debido proceso que requerían las circunstancias particulares del caso. A su entender, ARPE estaba facultada para ordenar la paralización de las obras de construcción sin conceder una vista previa, toda vez que se trataba de una medida cautelar y no de una revocación final de los permisos

otorgados. A su vez, señaló que la agencia no estaba impedida de actuar como lo hizo puesto que, aunque no está facultada para adjudicar asuntos de titularidad, la "duda sustancial" sobre ese aspecto levantada por la Opinión del Secretario de Justicia ponía en tela de juicio la validez de los permisos otorgados.

Evaluados los planteamientos de ambas partes, el foro apelativo determinó que aun luego de otorgados los permisos, ARPE mantenía jurisdicción sobre los mismos. De igual forma, expresó que dicha agencia no se excedió en el ejercicio de su autoridad, toda vez que delimitó su intervención al asunto de la concesión de los permisos y no a la titularidad de los terrenos. Dicho foro validó que ARPE invocara el procedimiento de acción inmediata dispuesto en la L.P.A.U., *supra,* y que basara su orden de paralización en la Opinión del Secretario de Justicia. No obstante, resolvió que ARPE le había violado a SGCP su derecho a un debido proceso de ley toda vez que, luego de tomar la acción administrativa, no celebró una vista con todas las garantías procesales correspondientes. Por tanto, devolvió el caso al foro administrativo para que se celebrara la referida vista. **A pesar de ello, el tribunal apelativo dejó en efecto la orden de paralización emitida por ARPE en su Resolución y Orden.**

Por hallarse insatisfecho con dicho proceder, SGCP acude ante nos y, básicamente, reproduce los mismos señalamientos de error que esbozó ante el Tribunal de Apelaciones. En primer lugar, señala que dicho foro erró

al resolver que la Opinión del Secretario de Justicia era vinculante para ARPE y que obligaba a la agencia administrativa a dejar sin efecto los permisos otorgados. Sostiene que tal actuación contraviene el mandato expreso del Artículo 104 de la Ley Hipotecaria, *supra*, así como las normas y reglamentos aplicables. En segundo lugar, alega que erró el Tribunal de Apelaciones al no revocar la continua paralización sumaria del proyecto, a pesar de haber resuelto que ARPE le había violado y continuaba violando su derecho a un debido proceso de ley.

El 8 de febrero de 2008, el Tribunal de Primera Instancia dictó sentencia en el caso San Gerónimo Caribe Project, Inc. v. E.L.A., Civil Núm. K2AC2007-2577. En su sentencia, contrario a las conclusiones de la Opinión del Secretario de Justicia, el foro primario resolvió que los terrenos donde se construye el Proyecto Paseo Caribe no son de dominio público.

En virtud de dicha determinación, y mientras pendía ante nuestra consideración el recurso presentado, SGCP nos solicitó que dejáramos sin efecto la orden de paralización emitida por ARPE. No obstante, dicha agencia extendió la mencionada orden de paralización por sesenta (60) días adicionales mediante Orden emitida el 22 de febrero de 2008.

Así las cosas, el pasado 28 de febrero expedimos el auto solicitado. Ese mismo día, en auxilio de nuestra jurisdicción, paralizamos los procedimientos ante ARPE y suspendimos la extensión de la orden de paralización

emitida por dicha agencia por entender que la misma era incompatible con el estado de derecho vigente, según dispuesto en la Sentencia emitida por el Tribunal de Primera Instancia.

Posteriormente, ARPE compareció mediante recurso de *certiorari* y solicitó que el mismo se consolidara con el recurso ya expedido, presentado por SGCP. Como único señalamiento de error, alegó que erró el tribunal apelativo al concluir que su actuación violó el derecho de SGCP a un debido proceso de ley. El 11 de marzo de 2008 expedimos la solicitud de *certiorari* presentada por ARPE y accedimos a consolidar ambos recursos. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

Como cuestión de umbral, y en vista de que en el día de hoy hemos resuelto el asunto de la titularidad de los terrenos en controversia mediante nuestra Opinión en <u>San Gerónimo Caribe Project, Inc. v. E.L.A.</u>, *supra*, es menester que examinemos si el recurso presentado en el caso de autos se ha tornado académico.

De conformidad con la doctrina prevaleciente, un caso es académico cuando se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente. Véanse <u>P.P.D.</u>

v. Gobernador I, 139 D.P.R. 643, 675 (1995); C.E.E. v. Depto. De Estado, 134 D.P.R. 927 (1993); E.L.A. v. Aguayo, 80 D.P.R. 552 (1958).

Anteriormente hemos expresado que una controversia puede convertirse en académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial torna en ficticia su solución, convirtiéndose así en una opinión consultiva sobre asuntos abstractos. Véanse P.P.D. v. Gobernador I, *supra*; Pueblo en interés menor M.A.G.O., 138 D.P.R. 20 (1995). Por tanto, al evaluar el concepto de academicidad hay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente. En vista de ello, debemos concluir que un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se ha perdido. P.P.D. v. Gobernador I, *supra,* a la pág. 676.[3]

En el presente caso, el 28 de febrero de 2008 emitimos una Resolución mediante la cual, en auxilio de nuestra jurisdicción, dejamos sin efecto una orden de ARPE que extendía por sesenta (60) días adicionales una orden previa de dicha agencia decretando la paralización

---

[3] No obstante, se han elaborado una serie de excepciones a la doctrina de academicidad que permiten la consideración de un caso que, de otro modo, resultaría académico en cuanto a su resultado o efecto inmediato. Estas excepciones se dan cuando se plantea ante el tribunal una cuestión recurrente o susceptible de volver a ocurrir o cuando aspectos de la controversia se tornan académicos pero subsisten consecuencias colaterales que tienen vigencia y actualidad. Véanse Angueira *v.* J.L.B.P., 150 D.P.R. 10 (2000); P.P.D. v. Gobernador I, *supra.*

de las obras de construcción del Proyecto Paseo Caribe. Debemos determinar, pues, si la referida Resolución o lo resuelto en el día de hoy en el caso San Gerónimo Caribe Project, Inc. v. E.L.A., hace innecesario pasar juicio sobre la validez de la referida orden administrativa y que, por ende, revoquemos la misma de forma permanente. Al así hacerlo, es menester recordar que ARPE emitió la referida orden de paralización como medida cautelar mientras realizaba una evaluación exhaustiva de todos los procedimientos de otorgación de permisos relacionados al Proyecto Paseo Caribe y otros proyectos aledaños.

**Dicha orden fue paralizada, en auxilio de nuestra jurisdicción, hasta tanto resolviéramos los méritos de este caso, pero la misma no ha sido revocada por éste ni por ningún otro tribunal. Y es que no pudo** haber sido revocada de forma permanente ya que ello implicaría un *injunction* **permanente** contra la misma. Ello sería contrario a lo dispuesto en la Regla 28 del Reglamento de este Tribunal.

En lo concerniente a la emisión de órdenes provisionales en auxilio de jurisdicción la referida Regla establece que: **"[n]o se expedirá una orden de la naturaleza de un *injunction* permanente, excepto como parte de la sentencia final que dictare el Tribunal en el pleito principal."** Regla 28, inciso (e), del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. XXI-A, R.28. Véase, Hernández Colón, Derecho Procesal Civil, LexisNexis de Puerto Rico, San Juan P.R., 2007, pág.

459. No olvidemos que las órdenes provisionales que emite este Tribunal en auxilio de su jurisdicción tienen el único propósito de paralizar los efectos de la decisión recurrida para hacer efectiva nuestra jurisdicción en un asunto pendiente ante nuestra consideración o evitar alguna consecuencia adversa que pueda causar un daño sustancial a una de las partes mientras esta Curia resuelve los méritos del recurso presentado. Véase Regla 28, inciso (a), 4 L.P.R.A. Ap. XXI-A, R.28.

Toda vez que este Tribunal paralizó la orden en cuestión —emitida el 25 de febrero de 2008— sólo de forma temporera, en auxilio de su jurisdicción, sus términos quedaron en suspenso, por lo que **de desestimar el caso y prevalecer la sentencia del tribunal apelativo, la orden cobraría su vigencia por el término que le restaba al momento de ser paralizada por esta Curia**. Dicho ello, no podemos considerar que el presente caso se ha tornado académico.

Por otra parte, si bien la disposición del caso San Gerónimo Caribe Project, Inc. v. E.L.A. podría tener el efecto de debilitar uno de los fundamentos principales esgrimidos por ARPE para decretar la paralización de las obras de construcción —la duda sustancial sobre la titularidad de los terrenos en controversia— de desestimar el presente recurso y no revocar expresamente la referida orden, existe el riesgo de que se produzcan dictámenes inconsistentes, en caso de que las actuaciones

de dicha agencia no sean cónsonas con nuestra decisión en el referido caso.

Más aún, si decidiéramos desestimar el presente recurso quedaría en vigor la sentencia del Tribunal de Apelaciones que, a su vez, avaló la orden de paralización mencionada y validó el procedimiento seguido por ARPE para intervenir con los intereses propietarios de SGCP. Al dejar inalterada la sentencia recurrida, estaríamos abriendo las puertas a la utilización indiscriminada del mecanismo sumario contemplado en la L.P.A.U. Nótese que al intervenir de forma sumaria con los intereses propietarios de SGCP y paralizar las obras de construcción del Proyecto Paseo Caribe, ARPE invocó el procedimiento de acción inmediata dispuesto en la Sección 3.17 de la L.P.A.U., *supra*. **Ello fundamentándose no sólo en la duda sustancial sobre la titularidad de los terrenos, sino también en las manifestaciones a favor y en contra del proyecto que se estaban desarrollando en las inmediaciones del mismo.**

Por lo tanto, no podemos pasar por alto que si desestimáramos el presente recurso y, por ende, prevaleciera la sentencia del Tribunal de Apelaciones, -que validó los fundamentos de ARPE para invocar la Sección 3.17 de la L.P.A.U.- ARPE contaría con el aval judicial para invocar el referido procedimiento sumario y mantener la paralización de las obras de construcción, mientras continúa su reevaluación de los permisos otorgados a SGCP, so pretexto de las manifestaciones que

se están llevando a cabo actualmente y que podrían suscitarse en el futuro.

En segundo lugar, debemos evaluar el efecto de nuestra determinación en el caso San Gerónimo Caribe Project, Inc. v. E.L.A. sobre las controversias relacionadas a los procedimientos administrativos iniciados por ARPE. Sobre el particular es menester tener presente que nuestra determinación en relación con la titularidad de los terrenos en controversia sólo dispone de un aspecto del procedimiento administrativo iniciado por la referida agencia a la luz de los hallazgos preliminares de una investigación mucho más abarcadora que aún realiza el Departamento de Justicia. En cuanto a este asunto, como bien señaló el Juez Asociado señor Rebollo López:

> Si este Tribunal resuelve que los terrenos son de dominio público, ARPE tendría una determinación definitiva de que medió error en la otorgación de los permisos y podrá actuar conforme a ello. Por otro lado, si este Tribunal resuelve que los terrenos en controversia no son de dominio público, el asunto ante ARPE se limitaría a que se demuestre, en una vista evidenciaria, si medió fraude o error en el proceso de otorgación de los permisos. San Gerónimo Caribe Proyect v. ARPE, 2008 TSPR 35, res. el 28 de febrero de 2008, Opinión Disidente, pág. 4.

Esto es, aun después de resolver que los terrenos en donde se construye el Proyecto Paseo Caribe no son de dominio público, procedería revocar la sentencia emitida por el Tribunal de Apelaciones, pues nada de lo resuelto

en el caso sobre la titularidad impide que ARPE continúe con los procedimientos investigativos correspondientes dirigidos a determinar si medió fraude o error en la otorgación de los permisos en controversia. Lo anterior implica que nuestra determinación en el caso de <u>San Gerónimo Caribe Project, Inc. v. E.L.A.</u> sobre la titularidad de los terrenos **no dispone de todas las controversias relacionadas al procedimiento administrativo iniciado por ARPE**, el cual pudiera continuar -ya no por el fundamento de la titularidad- sino bajo la autoridad de ARPE para reevaluar y revocar permisos ya otorgados cuando ha mediado fraude o error en la otorgación de los mismos. No obstante, dicho procedimiento deberá llevarse a cabo de conformidad con lo que aquí se disponga.

De esta manera, de no ser por los recursos que tenemos ante nuestra consideración, no podríamos aplicar en el contexto administrativo la determinación a la que hemos llegado sobre la titularidad de los terrenos en controversia. Si bien la propia agencia podría aplicar dicha determinación una vez se devuelva el caso, lo cierto es que lo haría sin el beneficio de nuestras conclusiones sobre la validez del proceso administrativo que se ha seguido en contra de SGCP.

**De igual forma, es menester recordar que la investigación que conduce el Departamento de Justicia aún no ha concluido y que la misma no se limita al asunto de la titularidad.** Por el contrario, tal como señala el

propio Secretario de dicha agencia, la referida investigación abarca "un sinfín de asuntos legales y fácticos sobre: el Proyecto Paseo Caribe; otros proyectos aledaños o relacionados al mismo; los terrenos en los cuales dichos proyectos están localizados; **el proceso de concesión de permisos para todos estos proyectos**; y los terrenos en los cuales el Hotel Caribe Hilton está localizado; entre otros." Véase Opinión del Secretario de Justicia del 11 de diciembre de 2007, *supra* (Énfasis nuestro).

Por tanto, una vez finalice dicha investigación, el Secretario de Justicia podría hacer nuevas recomendaciones a las agencias concernidas con relación a los permisos otorgados a SGCP. Esto es, a pesar que nuestra Opinión en San Gerónimo Caribe Project, Inc. v. E.L.A., *supra,* resuelve el asunto de la titularidad, ello no impide que tanto el Departamento de Justicia como ARPE o alguna otra agencia pueda actuar nuevamente sobre los permisos en controversia de probarse –por ejemplo– que medió fraude en la concesión de los permisos a favor de SGCP e invocar la Sección 3.17 de la L.P.A.U., *supra*, sobre el procedimiento de acción inmediata que originó el caso de autos.

A la luz de lo anterior, no cabe duda que nuestros pronunciamientos en el presente recurso tienen un efecto práctico sobre la investigación que conduce el Departamento de Justicia y los procedimientos administrativos de reevaluación de permisos **que aún**

**conducen ARPE** y otras agencias. De igual forma, nuestra determinación tiene repercusiones directas sobre los procedimientos administrativos que puedan iniciarse tanto en ARPE como en otras agencias a la luz de las conclusiones finales de la investigación del Departamento de Justicia. El asunto de la titularidad es simplemente uno de los ángulos examinados en el proceso de investigación y reevaluación exhaustiva de los permisos en controversia que lleva a cabo el Departamento de Justicia.

Por tanto, **habiendo establecido que el Departamento de Justicia continúa con su investigación y que agencias como ARPE retienen jurisdicción sobre los permisos en controversia aun después de concedidos los mismos, –y que nada impide que ARPE continúe con los procedimientos investigativos correspondientes dirigidos a determinar si medió fraude o error en la otorgación de permisos– debemos delimitar y aclarar las garantías del debido proceso de ley que la agencia debe ofrecer en el curso de los procedimientos ya iniciados y en caso de intervenir nuevamente con estos permisos como resultado de las conclusiones finales de la referida investigación.**

Lo anterior requiere que nos pronunciemos sobre la procedencia de los trámites de reevaluación de permisos iniciados por ARPE tras invocar el procedimiento de acción inmediata de la L.P.A.U., y basado exclusivamente en conclusiones preliminares contenidas en la Opinión del Secretario y en las manifestaciones suscitadas en las

inmediaciones del proyecto. En vista de ello, no cabe duda que los recursos presentados y las controversias suscitadas por éstos no se han tornado académicos por causa de lo resuelto en San Gerónimo Caribe Project, Inc. v. E.L.A., *supra*.

Aclarado lo anterior, procedemos a examinar los méritos de la presente controversia.

## III

### A

De entrada, es menester señalar que la normativa sobre el debido proceso de ley, en su modalidad procesal, constituye el marco conceptual que rige el procedimiento administrativo del caso de autos. Al respecto, nuestra Constitución dispone en su Artículo II, Sección 7, que nadie será privado de su libertad o propiedad sin el debido proceso de ley. Const. E.L.A., L.P.R.A., Tomo 1, ed. 1996, pág. 280.

El propósito de esta garantía elemental de nuestro ordenamiento jurídico es prevenir que el Estado abuse de sus poderes o que los ejerza de forma arbitraria, en perjuicio del individuo.[4] Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 575 (1992). Para que se active la protección de la mencionada cláusula, es necesario que esté en juego un interés de propiedad o libertad del individuo. P.A.C. v. E.L.A. I, 150 D.P.R. 359, 376

---

[4] La protección concedida por la cláusula del debido proceso de ley se extiende a las corporaciones. Intl. General Electric v. Srio. de Hacienda, 107 D.P.R. 467, 471 (1978).

(2000). Respecto a este requisito, desde <u>Phi Delta Pi v. Junta Planificación</u>, 76 D.P.R. 585, 591 (1954) resolvimos que un permiso de construcción debidamente otorgado **y por el cual su concesionario actúa e incurre en gastos sustanciales** constituye un interés de propiedad. En esa ocasión, expresamos que:

> [U]na vez se haya expedido un permiso de construcción por un funcionario debidamente autorizado, y la persona que ha obtenido el permiso ha actuado a base de ese permiso y ha incurrido en gastos sustanciales, el derecho logrado en virtud de la construcción se convierte en un derecho adquirido que el gobierno no puede destruir en virtud de una revocación del permiso. <u>Phi Delta Pi v. Junta Planificación</u>, *supra*.

Recientemente, en <u>Maldonado v. Junta de Planificación</u>, res. 10 de mayo de 2007, 2007 TSPR 87, tuvimos la oportunidad de distinguir entre una solicitud de permiso y un permiso expedido. Allí expresamos que mientras una solicitud de permiso de construcción no concede un derecho adquirido para su aprobación, una vez se expide dicho permiso y el concesionario actúa conforme al mismo e incurre en gastos sustanciales, ha adquirido un derecho. Así, reafirmamos la norma adoptada en <u>Phi Delta Pi v. Junta de Planificación</u>, *supra*.[5]

_____

[5] Cabe señalar que, en el alegato de ARPE, el Procurador General señala que <u>Maldonado v. Junta de Planificación</u>, *supra*, no es de aplicación al caso de autos, pues la agencia no revocó –sino paralizó– los permisos concedidos a SGCP. Sin embargo, esta alegación ignora que desde el origen de la controversia del caso de autos –entiéndase, desde la Opinión del Secretario de Justicia– se le recomendó a ARPE que iniciara un proceso de revocación de los mencionados permisos.

Cumplido el requisito de que exista un interés de propiedad o libertad, debe determinarse cuál es el procedimiento exigido. P.A.C. v. E.L.A. I, *supra*; Rodríguez Rodríguez v. E.L.A., *supra*, a la pág. 578; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987). Esta determinación requiere un análisis de los intereses gubernamentales, así como los de la persona afectada. Véanse, Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 730-731 (1982). Véanse además, P.A.C. v. E.L.A. I, *supra*; Rivera Rodríguez & Co. v. Lee Stowell, Etc., 133 D.P.R. 881, 888 (1993).

Con respecto al procedimiento exigido, hemos reiterado que el mismo debe satisfacer las exigencias mínimas del debido proceso de ley, como por ejemplo, la oportunidad de ser oído, el derecho a contra-interrogar y el derecho a examinar la evidencia presentada por la parte contraria. Salvá Santiago v. Torres Padró, res. 1 de junio de 2007, 2007 TSPR 101; Rafael Rosario & Assoc. v. Depto. Familia, 157 D.P.R. 306, 330 (2002); Rivera Rodríguez & Co. v. Lee Stowell, Etc., *supra*, a la pág. 889.

Cónsono con lo anterior, la L.P.A.U., incorporó a los procedimientos adjudicativos formales ante las agencias las siguientes garantías que tienen su raíz en los principios del debido proceso de ley: (a) derecho a notificación oportuna de los cargos o querellas; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial; y (d) derecho a que la decisión

se base en el expediente. 3 L.P.R.A. sec. 2151; Comisionado de Seguros v. A.E.E.L.A., res. 5 de junio de 2007, 2007 TSPR 112. Hemos establecido que cualquier determinación de una agencia que se haga en contravención de estas pautas mínimas no puede prevalecer. *Id.*

A su vez, el Reglamento de Procedimientos Adjudicativos de ARPE, *supra*, ordena una interpretación liberal del mismo que garantice el debido proceso de ley y que cumpla con los propósitos de la L.P.A.U. y de la Ley Orgánica de ARPE, Ley Núm. 76 de 24 de junio de 1975. Sec. 1.07, Reglamento Núm. 6435, *supra*. A tales fines, el Reglamento mencionado detalla el proceso a seguir para la revocación de permisos ya otorgados.

En particular, el Reglamento dispone que el proceso de revocación puede ser iniciado por la propia ARPE o a solicitud de parte, ya sea mediante una querella de origen interno o a través de una querella de origen externo. Sec. 19.02, Reglamento Núm. 6435, *supra*. Véase además, la Sec. 3.01 del Reglamento. Como requisito de umbral para el inicio del proceso de revocación en aquellos casos donde el permiso en cuestión fue aprobado mediante certificación, debe establecerse que "la autorización o permiso obtenido fue **sustancialmente producto de fraude o error** o [que] la obra está siendo construida **en contravención con lo aprobado**". Sec. 19.03, inciso (1) Reglamento Núm. 6435, *supra.* (Énfasis nuestro) El procedimiento contempla una previa notificación de la intención de revocar y la citación a una vista, así como

un apercibimiento de la autoridad de ARPE para tomar la acción de revocación u otras acciones disponibles. *Id.*

La Sección 19.05 del Reglamento rige el procedimiento específico que debe seguir la agencia para la revocación de permisos. Dicha sección dispone que la notificación de la intención de revocar y la citación a la vista correspondiente contendrá, entre otras cosas, la siguiente información: (1) los hechos en que se fundamenta la intención de revocar; (2) las **disposiciones legales o reglamentarias cuya infracción se alega**; (3) un apercibimiento al promovido de que cuenta con diez (10) días para presentar sus defensas; y (4) un apercibimiento al promovido de que, si no comparece, se expedirá una resolución revocando el permiso o autorización concedida. Esta notificación se debe emitir con al menos quince (15) días de anticipación, pero dicho término puede acortarse por justa causa que se hará constar en la citación. Sec. 19.05, Reglamento Núm. 6435, *supra*. (Énfasis nuestro). Véase además, la Sec. 20.03 del Reglamento Núm. 6435, *supra*.

**Si el requerido comparece**, ARPE debe determinar si es posible la corrección de los actos que motivaron el inicio del proceso o si procede la revocación con cualquier otra penalidad o sanción. En ese caso, se envía copia de la notificación sobre la intención de revocar y la citación a la vista, así como copia del expediente a la Oficina de Asuntos Legales para que se asigne un oficial examinador y se dilucide el asunto. En esta

etapa, el Reglamento dispone que ARPE "podrá **suspender** el permiso o autorización o sus efectos y tomar todas las medidas protectoras de su jurisdicción y de los intereses involucrados". *Id*. (Énfasis nuestro). Si el requerido comparece y no prevalece, o si no comparece, ARPE debe decretar la revocación del permiso. *Id*.

Este es, en términos generales, el procedimiento dispuesto por ARPE para la revocación de un permiso previamente concedido. Dado que las agencias están obligadas a observar estrictamente las reglas que promulgan, no cabe duda que ARPE está obligada a ceñirse a ese procedimiento y que no queda a su arbitrio reconocer o no los derechos que el mismo conlleva. Véanse Torres v. Junta Ingenieros, 161 D.P.R. 696, 712 (2004); Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 764-765 (1999).

Ahora bien, anteriormente hemos expresado que el debido proceso de ley no es un molde riguroso que se da en el abstracto, pues su naturaleza es circunstancial y pragmática. Así, cada caso debe evaluarse a la luz de sus circunstancias particulares. P.A.C. v. E.L.A. I, *supra*; Rivera Rodríguez v. Lee Stowell, Etc., *supra*, a la pág. 888.[6] En este sentido, a modo de **excepción**, hemos reconocido que "hay ocasiones en que el Estado tiene

---

[6] Cabe señalar que aunque en el campo administrativo las normas del debido proceso de ley no se aplican con la misma rigurosidad que en la adjudicación judicial, sí se requiere un proceso justo y equitativo que garantice y respete la dignidad de las personas afectadas. Torres v. Junta Ingenieros, *supra*, a la pág. 713; López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996).

algún interés de importancia que exige la intervención temporal con la propiedad o libertad de una persona antes de que pueda brindársele la oportunidad de ser oído". Vélez Ramírez v. Romero Barceló, *supra*, a la pág. 730. Véase Díaz Martínez v. Policía de P.R., 134 D.P.R. 144, 151 (1993).

En esos casos, para justificar la actuación sumaria del Estado, debe estar presente una urgencia suficientemente fuerte, como para pasar sobre los derechos de una parte. Vélez Ramírez v. Romero Barceló, *supra*, a la pág. 736. Debe recordarse que el requisito fundamental del debido proceso de ley es la concesión del derecho a ser oído antes de ser despojado de algún interés de propiedad o libertad. Rivera Rodríguez & Co. v. Lee Stowell, Etc., *supra*, a la pág. 889. Véase J.R.T. v. Hato Rey Psychiatric Hospital, 119 D.P.R. 62, 70 (1987). A tales efectos, hemos expresado que la privación de alguno de dichos intereses sin la concesión de una oportunidad de ser oído "se ha considerado siempre ajeno al debido proceso". Rivera Rodríguez & Co. v. Lee Stowell, Etc., *supra*, a la pág. 889.

Por tanto, para prescindir de dicha garantía, el interés perseguido por el Estado debe ser de una intensidad tal que justifique su actuación sumaria. Se trata de situaciones en que el Gobierno tiene que actuar rápidamente para garantizar el orden, la seguridad o la salud de sus ciudadanos o situaciones extraordinarias y realmente excepcionales que requieran acción inmediata y

sin dilación por parte del Estado. Díaz Martínez v. Policía, *supra*; Rivera Rodríguez & Co. v. Lee Stowell, Etc., *supra*, a la pág. 890, nota 3 y pág. 891. En tales casos, corresponderá a los tribunales hacer un balance de los intereses encontrados, a la luz de las circunstancias particulares. Díaz Martínez v. Policía, *supra*, a la pág. 152.

A tenor con esta doctrina, la L.P.A.U. reconoce en su Sección 3.17 un procedimiento de acción inmediata mediante el cual las agencias pueden prescindir de los procedimientos adjudicativos ordinarios. Al respecto, la referida disposición establece lo siguiente:

> Procedimiento adjudicativo de acción inmediata
>
> (a) Una agencia podrá usar procedimientos adjudicativos de **emergencia** en una situación en que exista un **peligro inminente para la salud, seguridad y bienestar público o que requiera acción inmediata de la agencia.**
>
> (b) La agencia podrá tomar solamente aquella acción que sea necesaria dentro de las circunstancias descritas en el inciso (a) precedente y que justifique el uso de una adjudicación inmediata.
>
> (c) La agencia emitirá una orden o resolución que incluya una concisa declaración de las determinaciones de hecho, conclusiones de derecho y las razones de política pública que justifican la decisión de la agencia de tomar acción específica.
>
> (d) La agencia deberá dar aquella notificación que considere más conveniente, a las personas que sean requeridas a cumplir con la orden o resolución. La orden o resolución será efectiva al emitirse.

(e) Después de emitida una orden o resolución de conformidad a esta sección la agencia deberá proceder prontamente a completar cualquier procedimiento que hubiese sido requerido, si no existiera un peligro inminente. 3 L.P.R.A. sec. 2167. (Énfasis nuestro).

Según se desprende de la disposición transcrita, el proceso de acción inmediata está disponible siempre que la situación que provoque la actuación de la agencia envuelva un peligro inminente para la salud, seguridad y bienestar público o que requiera acción inmediata de la agencia. No obstante, en tales casos es necesario que la agencia complete el procedimiento ordinario una vez cesen las circunstancias peligrosas.

Por otro lado, de la referida disposición también se colige que el procedimiento adjudicativo de emergencia iniciado por la agencia debe limitarse a lo necesario, a la luz de lo que requiera la situación de peligro o extraordinaria. En tales casos, aunque se le exige a la agencia que emita una orden o resolución en la que incluya determinaciones de hechos y conclusiones de derecho, así como las razones que justifican la acción inmediata, se prescinde de la notificación ordinaria, permitiéndole a la agencia que efectúe dicha notificación del modo que estime más conveniente.

La L.P.A.U. no provee definiciones ni parámetros para precisar qué situación o circunstancias justificarían que una agencia se aparte del procedimiento adjudicativo ordinario e invoque la mencionada Sección

3.17.   El Historial Legislativo de la L.P.A.U. tampoco arroja luz al respecto.   No obstante, en ocasiones anteriores hemos tenido la oportunidad de precisar el alcance del concepto "emergencia".   Hemos afirmado que dicho concepto "comprende un suceso o combinación y acumulación de circunstancias que **exigen inmediata actuación**. Emergencia es sinónimo de urgencia, necesidad, prisa." Meléndez Ortiz v. Valdejully, 120 D.P.R. 1, 22-23 (1987). (Énfasis nuestro). Véase Hon. Acevedo Vilá v. C.E.E., res. 27 de diciembre de 2007, 2007 TSPR 231.

Toda vez que el procedimiento de acción inmediata es una excepción que permite a las agencias desviarse del cauce ordinario que garantiza el derecho al debido proceso de ley, las circunstancias que invoque la agencia deben evaluarse cuidadosamente, tomando en cuenta que la situación debe ser una extraordinaria y realmente excepcional, que implique la existencia de un peligro inminente para la salud, la seguridad y el bienestar público. 3 L.P.R.A. sec. 2167. Véase Rivera Rodríguez & Co. v. Lee Stowell, Etc., *supra*. Por ello, en estos casos, el criterio rector debe ser si la dilación que conlleva emprender un procedimiento ordinario permitiría que ocurra, precisamente, lo que la acción sumaria pretende evitar.[7]

---

[7] En la jurisprudencia federal, se han reconocido varias instancias en las cuales se justifica este tipo de acción. Entre ellas: la emisión de órdenes de cese inmediato por actividades que representan un peligro inminente a la salud o a la seguridad del público por parte de operadores de minas de cobre, Hodel v. Virginia

De lo anterior se desprende que para que la actuación sumaria esté justificada debe estar en juego un interés apremiante del Estado que pudiera ser afectado por una situación extraordinaria que no pueda protegerse mediante los mecanismos ordinarios del andamiaje gubernamental. En tales casos, el derecho a ser oído puede ceder. Véase López Rivera v. Administración de Corrección, res. el 15 de julio de 2008, 2008 TSPR 121.

Cónsono con lo anterior, el Profesor Demetrio Fernández Quiñones, en su obra Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da Ed., Forum, 2001, pág. 200, ha señalado que el procedimiento de acción inmediata constituye una excepción al derecho a ser oído. Según Fernández Quiñones, "[l]egitima el uso de dichos procedimientos el que exista 'un peligro inminente para la salud, seguridad y bienestar público

Surface Mining Association, 452 U.S. 264 (1981); la suspensión sumaria de un estudiante de escuela pública cuando éste representa un peligro para otras personas o para la propiedad de la institución, Goss v. López, 419 U.S. 565 (1975); la confiscación de medicinas con etiquetas engañosas, Ewing v. Mytinger & Casselberry, 339 U.S. 594 (1950); y la confiscación y destrucción de alimentos contaminados, North American Cold Storage Co. v. City of Chicago, 211 U.S. 306 (1908). Sin duda, en estas circunstancias excepcionales, la posposición de la intervención del Estado implicaría un riesgo para la salud, la seguridad o el bienestar del pueblo. Véase Díaz Martínez v. Policía de P.R., supra, a la pág. 152. Véanse además, F.D.I.C. v. Mallen, 486 U.S. 230 (1988) (suspensión sumaria de un presidente de un banco, acusado de delito, para proteger los intereses del público y la confianza en las instituciones bancarias); Calero-Toledo v. Pearson Yacht, 416 U.S. 663 (1974) (confiscación de un yate relacionado a la comisión de un acto delictivo); y Phillips v. Commissioner of Internal Revenue, 283 U.S. 589 (1931) (recaudación sumaria de contribuciones para salvaguardar la estabilidad del erario público).

que requiera acción inmediata de la agencia'. Se justifica la excepción a la exigencia procesal de celebrar una audiencia en casos que pueda ser lesionado el disfrute del derecho de propiedad por encontrarse en juego el interés supremo del bienestar general de la comunidad". *Id*. (Cita omitida).

Ahora bien, no cabe duda que cuando no se trata de una emergencia, la intervención sumaria del Estado con los intereses de propiedad o libertad del individuo afectado no puede implicar que éste sufra daño sustancial, pues la paralización de la actuación estatal deberá estar disponible hasta tanto se dilucide el asunto con las debidas garantías del debido proceso de ley. Sobre ello, el tratadista Schwartz ha señalado que:

> **In the nonemergency case, the postponed hearing satisfies due process only if the individual is not injured in the interim. Pending the hearing, there should be provision for a stay of the agency act.** In the emergency cases, adverse effect may occur immediately. The public interest in dealing with the emergency justifies summary action which may take effect at once. Emergency permits instant closing of the unsafe mine, seizure and sale of taxpayer's property, and takeover of the bank; any hearing comes after this drastic acts have taken place. B. Schwartz, Administrative Law, 3ra Ed., Little, Brown and Co., 1991, pág. 246. (Cita omitida, énfasis nuestro). Véase además, Goss v. López, *supra*, a la pág. 581, nota 10.

**B**

En el presente caso, como indicáramos anteriormente, la Opinión del Secretario de Justicia le recomendó a ARPE iniciar un proceso de revocación de permisos, al amparo

de la Sección 19.00 del Reglamento Núm. 6435, *supra*, es decir, mediante el procedimiento ordinario contemplado por dicho Reglamento. Asimismo, en su resolución, la Junta de Planificación le ordenó a ARPE tomar las medidas necesarias para implantar las recomendaciones de dicho funcionario, incluyendo la celebración de una vista administrativa, con las garantías del debido proceso de ley.

A pesar de ello, en la orden de mostrar causa ARPE invocó el procedimiento de acción inmediata establecido en la Sección 3.17 de la L.P.A.U. y expresó lo siguiente:

> Luego de la Opinión emitida por el Secretario de Justicia han surgido **interrogantes sobre la titularidad de los terrenos** donde se ubica el Proyecto Paseo Caribe. A su vez, se han generado varios **incidentes que pueden afectar la seguridad del personal de dicho proyecto y de los ciudadanos que se han estado manifestando en las inmediaciones de los terrenos**. Asimismo, **la conclusión de la mencionada Opinión** a los efectos de que algunos de los terrenos ocupados por el Proyecto Paseo Caribe son de dominio público, demuestran la existencia de un alto interés público en la reevaluación de los endosos de dicho proyecto a fin de salvaguardar los derechos de los proponentes y desarrolladores así como los recursos del Pueblo de Puerto Rico. (Énfasis nuestro).

Aunque no ponemos en duda el interés público que puede existir en relación a la controversia sobre la titularidad de los terrenos donde ubica el Proyecto Paseo Caribe, resulta evidente que la justificación ofrecida por ARPE para evadir el procedimiento ordinario dista mucho de las circunstancias extraordinarias que

permitirían la utilización del procedimiento de acción inmediata contemplado en la L.P.A.U. Nótese que la justificación ofrecida por ARPE para paralizar las obras de construcción y poner en suspenso la validez de los permisos otorgados se basó, esencialmente, en las interrogantes levantadas por el Secretario de Justicia con respecto a la titularidad de los terrenos en controversia. Si bien dichas interrogantes pueden tener pertinencia en este contexto, no podían servir de base para privar a una entidad de sus derechos propietarios sin las correspondientes garantías procesales. Ello no presenta una situación en que se requiera la acción sumaria del Estado para evitar daños inminentes. Por tanto, no cabe duda que tales interrogantes y conclusiones no constituyen el tipo de circunstancia extraordinaria y de urgencia que hubiera justificado la intervención sumaria de ARPE con los derechos propietarios de SGCP.

Por otro lado, tampoco podemos refrendar la tesis del Estado a los efectos de que los incidentes y manifestaciones ocurridas en el mencionado proyecto eran suficientes para justificar la intervención sumaria de ARPE. Si bien dichos eventos provocaron cierto grado de alteración en el curso normal de la vida ciudadana, de ninguna manera se puede afirmar que ellos –por sí solos– constituyen el tipo de situación extraordinaria y excepcional que debe servir de base a la actuación sumaria que ARPE llevó a cabo invocando el procedimiento

de acción inmediata de la L.P.A.U. Sin duda, el grado de desasosiego que los mismos pueden haber generado, no equipara las instancias en que se ha reconocido el cumplimiento con el estándar de peligro inminente a la salud, seguridad o bienestar público o de una situación extraordinaria que requiera acción inmediata del Estado. Después de todo, la experiencia ha demostrado que con la labor integrada de distintas entidades gubernamentales, dichos eventos pueden ser controlados sin que se afecte sustancialmente la seguridad y el bienestar general. **Debemos recordar que las manifestaciones o protestas de ciudadanos son parte del quehacer cotidiano de una sociedad democrática como la nuestra y no tienen por qué minar la estabilidad jurídica de nuestro ordenamiento, ni mucho menos la confianza que las partes deben tener en las actuaciones de las agencias gubernamentales.**

Claro está, lo anterior no significa que ARPE esté impedida de suspender permisos o autorizaciones previamente otorgadas, entablar recursos de interdicto ante los tribunales, o emitir órdenes de cese y desista en circunstancias meritorias como cuando ha habido violaciones a las leyes o reglamentos que administra o fraude o error en la otorgación de los mismos. Véase Ley Orgánica de ARPE, Art. 25 y 28, 23 L.P.R.A. sec. 71x y 23 L.P.R.A. sec. 72; Reglamento Núm. 6435, *supra*. El propio Reglamento Núm. 6435, *Id*, le concede expresamente esa facultad en la sección 19.05. Sin embargo, debe quedar claro que dicha facultad no puede ejercerse en

abstracción de las garantías ordinarias mínimas contempladas en dicho reglamento, como ocurrió en el caso de autos.

Erró, pues, el foro apelativo intermedio al ordenar la celebración de una vista posterior conforme a la Sección 3.17 de la L.P.A.U., *supra*.[8] Habiendo determinado dicho foro que a SGCP se le había violado su derecho al debido proceso de ley, procedía que el tribunal dejara sin efecto la actuación administrativa.

**IV**

Ahora bien, más allá de que ARPE no podía invocar el procedimiento de acción inmediata dispuesto en la L.P.A.U., el Tribunal de Apelaciones debió dejar sin efecto la orden de paralización emitida por ARPE, toda vez que dicha agencia no podía basar su acción en la "duda sustancial" sobre la titularidad de los terrenos en controversia, surgida a raíz de unos hallazgos

---

[8] El Tribunal de Apelaciones validó el uso del procedimiento de acción inmediata invocado por ARPE aludiendo a lo resuelto por este Tribunal en Cervecería Corona v. Srio. Obras Públicas, 97 D.P.R. 44 (1969), donde resolvimos que no se justificaba limitar el procedimiento sumario allí en controversia a situaciones de emergencia. Sin embargo, nuestras expresiones en Cervecería Corona —el cual fue resuelto mucho tiempo antes de la aprobación de la L.P.A.U.— no pueden interpretarse como un cheque en blanco a favor del Estado para que éste se aparte indiscriminadamente de los procedimientos ordinarios establecidos en sus propios reglamentos para privar a un individuo de un interés propietario. Por otro lado, debemos tener presente que al avalar el uso del procedimiento sumario impugnado en ese caso, a saber, la remoción de rótulos instalados ilegalmente, consideramos que el mismo ofrecía ciertas garantías, de forma tal que proveía "amplia protección a los derechos de propiedad de las personas afectadas". Cervecería Corona v. Srio. Obras Públicas, *supra*, a la pág. 54.

preliminares de la investigación que realiza el Departamento de Justicia y contenidas en la Opinión emitida por el Secretario de Justicia. Nótese que el Reglamento Núm. 6435, *supra*, autoriza a ARPE a ordenar la inmediata paralización de una obra cuando la misma está siendo ilegalmente construida o usada en contravención de alguna disposición de las leyes y reglamentos o del permiso otorgado. Sec. 5.04, Reglamento Núm. 6435, *supra*; véase además Sec. 13.06 del Reglamento Núm. 6435, *supra*. **Igualmente, dicho cuerpo reglamentario permite que se revoquen permisos previamente concedidos cuando se prueba que fueron obtenidos mediando fraude o error o si la obra está siendo construida en contravención de lo aprobado.** Sec. 19.03 Reglamento Núm. 6435, *supra.*

No obstante, en el caso de autos ARPE no le imputó a SGCP violación alguna a las leyes o reglamentos que el organismo administrativo debe implantar y supervisar. Dicha agencia tampoco imputó fraude en el proceso de concesión de permisos ni la existencia de error en el mismo. **Más bien, ARPE se limitó a alegar que a la luz de la Opinión del Secretario de Justicia existe "duda sustancial" sobre la titularidad de los terrenos donde ubica Paseo Caribe.**[9] Claramente, dicho fundamento

_____

[9] Del propio alegato presentado por ARPE se desprende con meridiana claridad que el fundamento de su proceder fue "la conclusión de la Opinión del Secretario de Justicia de que los terrenos ganados al mar en donde radica parte del Proyecto Paseo Caribe son bienes de dominio público". Por tanto, la razón para iniciar los procedimientos que culminaron con la paralización de las obras de construcción de SGCP no fue otra cosa que la

resultaba insuficiente para suspender la validez de los permisos otorgados y emitir la orden de paralización.

En primer lugar, ello supondría reconocerle a la Opinión del Secretario de Justicia carácter adjudicativo con respecto a derechos de las partes en un procedimiento cuasi-judicial ante otra agencia. De esta forma, el Secretario estaría abrogándose facultades que competen a otros organismos gubernamentales. En segundo término, avalar la actuación administrativa conllevaría pasar por alto que ni la Opinión del Secretario de Justicia ni ARPE tenían autoridad para dilucidar la titularidad de los terrenos, por ser esto último facultad exclusiva de los tribunales.

En cuanto al primer aspecto señalado, conviene destacar que, ciertamente, la Ley Orgánica del Departamento de Justicia autoriza al Secretario a emitir opiniones por escrito al Gobernador, a la Asamblea Legislativa o a cualquiera de sus Cámaras, al Contralor de Puerto Rico, a los jefes de Agencias y de las corporaciones públicas, cuando medie una resolución de su Junta de Directores autorizando la solicitud, sobre cuestiones de derecho que se susciten en el ejercicio de sus funciones. 3 L.P.R.A. sec. 292c. Igualmente, no ponemos en tela de juicio que aunque las opiniones del Secretario de Justicia no obligan a los tribunales, sí tienen un gran valor persuasivo. Véase <u>Maldonado v. Junta</u>

_____

"duda sustancial" sobre la titularidad de los terrenos, surgida luego de la publicación de la Opinión del Secretario de Justicia.

de Planificación, *supra*; In re Secretario de Justicia, 118 D.P.R. 827, 855 (1987).

Ahora bien, en cuanto a asuntos que estén ante la consideración de los tribunales, la ley dispone que el Secretario debe abstenerse de opinar formalmente, aunque no impide que asesore al funcionario correspondiente si entiende que es necesario para que éste pueda continuar desempeñando las funciones que le impone la ley, sin menoscabo de la facultad que corresponde al Poder Judicial como intérprete final de la Constitución y de las leyes de Puerto Rico. Véase Art. 6, Ley Orgánica del Departamento de Justicia, *supra.*[10] Conforme a dicha norma, el Secretario de Justicia no emitirá opiniones en casos donde un organismo de gobierno somete una cuestión esencialmente judicial, a ser resuelta finalmente por los tribunales de justicia. Véase, Carta Circular del Secretario de Justicia Núm. 01-01 de 27 de marzo de 2001; Carta Circular Núm. 2006 de 15 de marzo de 1985.

En cuanto al efecto de las Opiniones del Secretario de Justicia a nivel interno de las agencias del Ejecutivo, se han elaborado teorías que le adscriben un carácter consultivo, no mandatorio, por lo que -teóricamente- el recipiente de la misma no viene obligado a seguir sus lineamientos. Sin embargo, por tratarse de opiniones oficiales del funcionario ejecutivo

---

[10] En algunas Cartas Circulares emitidas por los Secretarios de Justicia, también se ha reiterado la norma mencionada. Véase, por ejemplo, Carta Circular Núm. 05-02 de 8 de septiembre de 2005.

de mayor jerarquía encargado de la administración de la justicia, en realidad son de un gran valor persuasivo. Véase Carlos I. Gorrín Peralta, <u>Fuentes y Proceso de Investigación Jurídica</u>, Equity Publishing Company, Orford, New Hampshire, 1991, pág. 258.

Sobre el particular, cabe destacar que una mayoría de las cortes estatales en Estados Unidos entiende que, lejos de ser mandatorias, las opiniones del Secretario de Justicia constituyen guías para las agencias del gobierno **en ausencia de una determinación judicial.**[11] Incluso aquellas cortes estatales que han determinado que las Opiniones del Secretario son mandatorias, **han limitado su alcance a situaciones en que la agencia actúa en su capacidad ejecutiva y han expresado que las mismas no obligan a las agencias en los procedimientos cuasi-judiciales.**[12]

De hecho, ha sido norma reiterada por varios Secretarios de Justicia, incluyendo el actual, que en el proceso de emitir opiniones debe cuidarse que la agencia no esté arrogándose facultades que competen primariamente a otros funcionarios u organismos gubernamentales. Véanse Carta Circular Núm. 05-02 de 8 de septiembre de 2005; Carta Circular Núm. 01-01 de 27 de marzo de 2001; Carta Circular Núm. 2004 de 30 de octubre de 1975.

---

[11] Véase Peter E. Reiser, Jr., <u>The Opinion Writing Function of Attorneys General,</u> 18 Idaho L. Rev. 9, 20-38 (1982).

[12] Véase <u>Pa. Liquor Control Bd. v. Kusic</u>, 299 A.2d 53, 55 (1973).

Conforme a lo anterior, no cabe duda que si bien las conclusiones del Secretario de Justicia en torno a la titularidad de los terrenos en controversia pueden tener fuerza persuasiva, las mismas no tuvieron el efecto de adjudicar los derechos de las partes envueltas en el procedimiento adjudicativo ante ARPE. Por tanto, ARPE estaba impedida de suspender el efecto de los permisos otorgados y ordenar la paralización de las obras meramente porque en la Opinión del Secretario se haya concluido que los terrenos en cuestión son de dominio público.

Ahora bien, dado que el aspecto que motivó la reevaluación de los permisos fue la titularidad de los terrenos, nada impedía que ARPE examinara de nuevo si SGCP acreditó su título de dominio con respecto a los terrenos en controversia. La facultad de ARPE para requerir que SGCP acreditara su título con relación a los terrenos en controversia surge del propio Reglamento Núm. 6435, *supra.* Dicho Reglamento le confiere autoridad para solicitar a todo aquel que interese obtener un permiso de construcción o uso que acredite su autoridad para realizar dicho acto de dominio.  En lo pertinente, el referido Reglamento dispone lo siguiente:

> Presentación del título – Se requerirá la presentación de evidencia fehaciente de titularidad o de la posesión, por ejemplo, sin limitarse a: escritura de adquisición, contrato de opción o **certificación registral**, escritura de usufructo, contrato de arrendamiento o carta de autorización del dueño u otros semejantes que permitan a la ARPE decidir sobre lo

solicitado. Los casos de propiedad que pertenezcan a más de una persona requieren la autorización de todos los dueños. Sec. 8.03, Reglamento Núm. 6435, *supra.* (Énfasis nuestro).

En este caso, SGCP cumplió con el requisito reglamentario de presentar prueba fehaciente de su titularidad. A tales fines, presentó una certificación de las constancias del Registro de la Propiedad que acreditaba su titularidad sobre los terrenos en donde se construye el Proyecto Paseo Caribe. Conforme a la Ley Hipotecaria, Ley Núm. 198 del 8 de agosto de 1979, 30 L.P.R.A. sec. 2001 *et seq.*, dicha inscripción en el Registro de la Propiedad goza de una presunción de corrección. Sobre este particular, la referida ley dispone:

A todos los efectos legales se presumirá que los derechos registrados existen y pertenecen a su titular en la forma determinada por el asiento respectivo. De igual modo se presumirá que quien tenga inscrito el dominio de los inmuebles o derechos reales tiene la posesión de los mismos. Esta presunción, al igual que la precedente, admite prueba en contrario, pero **los tribunales cuidarán de que en caso de duda sobre el hecho de la posesión sea reconocido como poseedor el titular inscrito, a reserva de las acciones que puede ejercitar su contradictor en la vía ordinaria correspondiente. Como consecuencia de lo dispuesto anteriormente no podrá ejercitarse ninguna acción contradictoria del dominio de inmuebles o derechos reales inscritos a nombre de un titular determinado, sin que previamente o a la vez se pida en demanda judicial la corrección, nulidad o cancelación de la correspondiente inscripción, cuando proceda.** Ley Hipotecaria, Art. 104, 30 L.P.R.A. sec. 2354. (Énfasis nuestro).

El lenguaje del referido estatuto es claro en cuanto a que la única forma de rebatir la presunción establecida en el Artículo 104 de la Ley Hipotecaria, *supra*, es instando una acción en los tribunales. La protección de los derechos inscritos en el Registro de la Propiedad se establece de forma inequívoca en la Ley Hipotecaria al disponer que los asientos del Registro -en cuanto se refieren a los derechos inscritos- están bajo las salvaguardas de los tribunales de justicia y producen todos sus efectos legales mientras dichos tribunales no hagan declaración en contrario. 30 L.P.R.A. sec. 2051. **De esta forma, tanto los asientos como los actos inscritos deben estimarse válidos hasta tanto los tribunales declaren su nulidad.**[13] Véase Banco Central Corp. v. Yauco Homes, Inc., 135 D.P.R. 858, 874 (1994); Consejo de Titulares v. MGIC Financial Corp., *supra*. (Énfasis nuestro).

De conformidad con lo anterior, todo el que alegue la nulidad de un acto o contrato que ha sido objeto de una inscripción en el Registro, tiene que acudir al

_____

[13] Esta norma aplica, incluso, a los actos nulos una vez estos son inscritos. Sobre el particular hemos señalado que:

> Lo que sucede es que la discordancia entre la realidad jurídica extrarregistral y la registral no tiene un contagio respecto al problema de la nulidad, ya que **si bien la inscripción no convalida el acto o contrato que sea nulo, sin embargo, produce todos sus efectos mientras esta inexactitud no sea declarada.** Consejo de Titulares v. MGIC Financial Corp., 128 D.P.R. 538, 557-558 (1957). (Énfasis nuestro).

tribunal para que sea el foro judicial quien dilucide la alegada nulidad. **Mientras el tribunal no haya declarado la nulidad del acto inscrito, el mismo goza de la presunción de validez del Artículo 104 de la Ley Hipotecaria y surte todos sus efectos.** Esto es así ya que tales inscripciones crean un "estado de derecho" en el Registro que sólo puede ser alterado por orden judicial. Véase Pino Development Corp. v. Registrador, 133 D.P.R. 373, 380 (1993); Cabassa v. Registrador, 116 D.P.R. 861, 864 (1986); Puffer v. Registrador, 61 D.P.R. 40, 42-43 (1942).

Por tanto, no cabe duda que la mera alegación de que la propiedad en controversia es un bien de dominio público, no susceptible de enajenación, no es suficiente para eliminar la presunción de validez y corrección de los derechos inscritos que da la Ley Hipotecaria, *supra*. Para ello, es necesario que se inicie un pleito de reivindicación en el cual el Estado presente prueba para impugnar el título inscrito. Véase Rubert Armstrong v. E.L.A., 97 D.P.R. 588, 592 (1969).

Siendo éste el "estado de derecho" del Registro y dado que las alegaciones expresadas en la Opinión del Secretario de Justicia no tuvieron el efecto de alterar el mismo, ni de dilucidar la titularidad de los terrenos en controversia, debemos concluir que ARPE erró al dejar sin efecto los permisos otorgados y ordenar la paralización de la construcción. Su determinación de que los terrenos en controversia son de dominio público,

aparte de no estar dentro de las facultades delegadas a dicha agencia, no corresponde al "estado de derecho" del Registro, que acredita la titularidad de los mismos a favor de SGCP.

Consciente de su falta de autoridad para dilucidar la titularidad de los terrenos en controversia, ARPE ha intentado justificar su proceder alegando que sus actuaciones no están fundamentadas en el asunto de la titularidad, sino en el uso que puede darle SGCP a los referidos terrenos. Sin embargo, de los autos surge claramente que tanto la Orden para Mostrar Causa de 14 de diciembre de 2007, como la Resolución y Orden del 27 de diciembre de 2007 paralizando las obras de construcción, estuvieron basadas en el asunto de la titularidad levantado por el Secretario de Justicia.[14] Todo parece

---

[14] A modo de ejemplo, al emitir la Resolución y Orden paralizando las obras de construcción, ARPE expresó:

> En el presente caso, es claro que la interpretación del Departamento de Justicia con relación a la existencia de terrenos ganados al mar y la posibilidad de que se estén llevando a cabo construcciones en terrenos de dominio público, establece una interpretación de derecho la cual fue adoptada por la Rama Ejecutiva como política pública. **Esta interpretación de derecho crea una duda sustancial sobre la titularidad del predio, que esta Administración de Reglamentos y Permisos debe tomar en consideración en su función fiscalizadora.** Resolución y Orden de 27 de diciembre de 2007, pág. 9. (Énfasis nuestro).

En esa misma orden ARPE añadió que:

> [E]sta Administración de Reglamentos y Permisos, en protección del bienestar

indicar que el raciocinio de ARPE fue que si la Opinión del Secretario es correcta, la autorización concedida a SGCP para construir sobre terrenos ganados al mar podría ser nula. Ello conllevaría la revocación, al menos parcial, de los permisos y su reformulación para adaptarlos a la ley.

No obstante, de conformidad con la Ley Hipotecaria y su jurisprudencia interpretativa, hasta tanto un tribunal no declare la nulidad del asiento registral, el mismo goza de la presunción de corrección dispuesta en el Artículo 104 de la Ley Hipotecaria, *supra,* y **surte todos sus efectos legales**. Véase Banco Central Corp. v. Yauco Homes, Inc., *supra*; Consejo de Titulares v. MGIC Financial Corp., *supra*; Pino Development Corp. v. Registrador, *supra*; Cabassa v. Registrador, *supra*; Puffer v. Registrador, *supra.*

En consecuencia, procede dejar sin efecto la orden emitida por ARPE suspendiendo la validez de los permisos

---

general y del concesionario y en atención al interés público involucrado en la presente controversia, **donde se están llevando a cabo construcciones en terrenos de dominio público,** por la presente y conforme a las facultades conferidas en la leyes y reglamentos se suspenden los efectos de los permisos de construcción concedidos por un término de sesenta (60) días a partir de la notificación de la presente orden y se ordena paralizar cualquier obra de construcción que se esté llevando a cabo en los predios de los casos aquí en controversia que no cuenten con un permiso de uso autorizado por esta Agencia. (Énfasis nuestro).

otorgados y paralizando la construcción del Proyecto Paseo Caribe.[15]

## V

En conclusión, las circunstancias particulares del caso ante nuestra consideración no representaban un peligro inminente a la salud, seguridad y bienestar público, por lo que ARPE no podía invocar el procedimiento de acción inmediata dispuesto en la L.P.A.U., *supra*, para desviarse del proceso ordinario establecido en sus propios reglamentos. Al así actuar, la agencia administrativa privó a SGCP de las garantías procesales mínimas que debe ofrecer el Estado cuando interviene con los intereses propietarios de una particular.

---

[15] Estando ante nuestra consideración la solicitud de *certiorari* presentada por SGCP y luego que el Tribunal de Primera Instancia, Sala Superior de San Juan, emitiera una Sentencia en el caso San Gerónimo Caribe Project, Inc. v. Estado Libre Asociado de Puerto Rico, Civil Núm.: K2AC2007-2577, resolviendo que los terrenos en los que SGCP construye no son de dominio público –la cual en ese momento ni siquiera había sido apelada– ARPE extendió la paralización de las obras por un término adicional de sesenta (60) días. Evidentemente, dicha orden extendiendo la paralización original contravino el estado de derecho vigente, el cual en ese momento quedó reafirmado por la Sentencia del Tribunal de Primera Instancia confirmando la titularidad de SGCP sobre los terrenos en controversia. Véase San Gerónimo Caribe Project Inc. v. Administración de Reglamentos y Permisos 2008 TSPR 35, res. 28 de febrero de 2008. En ese momento, SGCP no sólo contaba con las constancias del Registro a su favor –que acreditaban su titularidad sobre los terrenos mencionados– sino también con una Sentencia del tribunal dilucidando la controversia sobre la titularidad. Por tanto, ARPE estaba impedida de prorrogar su orden de paralización sesenta (60) días adicionales a base del asunto de la titularidad, pues el estado de derecho vigente establecía claramente la titularidad a favor de SGCP.

Más importante aún, independientemente de que ARPE hubiese seguido el procedimiento ordinario para intervenir con los permisos otorgados a SGCP, lo cierto es que ni la Opinión del Secretario de Justicia ni ARPE podían dilucidar la titularidad de los terrenos en controversia ya que esto es facultad exclusiva de los tribunales. **Por ello, aunque entendemos que ARPE tiene autoridad para reevaluar la concesión de permisos ya otorgados a fin de hacer valer las leyes y reglamentos que administra, somos del criterio que dicha agencia no tenía facultad para dejar sin efecto los permisos en controversia basándose en una "duda sustancial" sobre la titularidad de los terrenos, a la luz de la Opinión del Secretario de Justicia, en ausencia de alegaciones de fraude o error en la otorgación de los referidos permisos.**

Conforme a su propio reglamento, ARPE sólo tenía autoridad para solicitar prueba fehaciente de la titularidad de SGCP, lo cual este último acreditó mediante la presentación de una certificación registral. **Si ARPE —o el Secretario de Justicia— entendía que el asiento registral que acreditaba la titularidad de SGCP no era válido por tratarse de terrenos de dominio público, tenía que acudir al foro judicial para que fuera éste el que declarara la nulidad de la inscripción registral.** Hasta tanto ello no suceda, la inscripción se presume válida y SGCP es el titular de los terrenos en cuestión. Resolver de otra forma, sería permitir una

usurpación por parte de las agencias administrativas de una facultad exclusiva de los tribunales.

## VI

Por todo lo antes expuesto, revocamos la Sentencia emitida por el Tribunal de Apelaciones. En vista de que ARPE no tiene autoridad para dilucidar el asunto de la titularidad -por ser ello facultad exclusiva de los tribunales- y de que hemos atendido dicho asunto en el día de hoy por medio de nuestra Opinión en el caso San Gerónimo Caribe Project, Inc v. Estado Libre Asociado, revocamos la Orden de ARPE del 22 de febrero de 2008 emitida al amparo de la Sección 3.17 de la L.A.P.U., *supra*, que extendió la suspensión de los permisos otorgados a SGCP y que habíamos paralizado temporeramente en auxilio de nuestra jurisdicción.

Además, se le ordena a ARPE suspender permanentemente los procedimientos de revocación de permisos iniciados a la luz de las conclusiones del Secretario de Justicia sobre la titularidad de los terrenos en controversia.[16]

Se dictará Sentencia de conformidad.


Federico Hernández Denton

---

[16] Ahora bien, ello no impide que de surgir información sobre fraude o error en la concesión de los permisos en controversia, ARPE inicie los procedimiento investigativos o de reevaluación de permisos que estime pertinente de conformidad a sus reglamentos y salvaguardando las garantías procesales de todas las partes, según dispuesto en la presente Opinión.

Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San Gerónimo Caribe Project,     *
Inc.                               *
                                    *
      Peticionario           *
                                    *
              v.             *     CC-2008-132
                                    *
Administración de Reglamentos y   *
Permisos                     *
                                    *
      Recurrida               *
********************************     Certiorari
(Cons.)
San Gerónimo Caribe Project,     *
Inc.                               *
                                    *
      Recurrido               *
                                    *
              v.             *     CC-2008-208
                                    *
Administración de Reglamentos y   *
Permisos                     *
                                    *
      Peticionaria           *
********************************

SENTENCIA

San Juan, Puerto Rico, a 31 de julio de 2008

      Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la Sentencia emitida por el Tribunal de Apelaciones. En vista de que ARPE no tiene autoridad para dilucidar el asunto de la titularidad –por ser ello facultad exclusiva de los tribunales– y de que hemos atendido dicho asunto en el día de hoy por medio de nuestra Opinión en el caso San Gerónimo Caribe Project, Inc v. Estado Libre Asociado, CT 2008-004, se revoca la Orden de ARPE del 22 de febrero de 2008 emitida al amparo de la Sección 3.17 de la L.A.P.U., *supra*, que extendió la suspensión de los permisos otorgados a SGCP y que habíamos paralizado temporeramente en auxilio de nuestra jurisdicción.

      Además, se le ordena a ARPE suspender permanentemente los procedimientos de revocación de permisos iniciados a la luz de las conclusiones del

Secretario de Justicia sobre la titularidad de los terrenos en controversia.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Todos los Jueces intervienen por Regla de Necesidad. Las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez emitieron Opiniones Disidentes.


                              Aida Ileana Oquendo Graulau
                           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| San Gerónimo Caribe Project, Inc.<br>            Peticionario<br><br>                    v.<br><br>Administración de Reglamentos y Permisos<br>            Recurrida | CC-2008-132 | *Certiorari* |
|---|---|---|
| San Gerónimo Caribe Project, Inc.<br>            Recurrido<br><br>                    v.<br><br>Administración de Reglamentos y Permisos<br>            Peticionaria | Cons.<br><br>CC-2008-208 | |

Opinión Disidente emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 31 de julio de 2008.

Disiento de la opinión mayoritaria, ya que contrario a lo allí expresado, entiendo que el caso de epígrafe es **evidentemente académico**. Por esa razón, me abstengo de exponer mis criterios sobre los fundamentos expresados en la opinión, a excepción de lo siguiente que, responsablemente, debo señalar. La opinión mayoritaria no hace un análisis completo de las amplias facultades delegadas a la Administración de Reglamentos y Permisos a través de los artículos 25 y 28 de su ley orgánica. Además, tampoco hace el balance objetivo entre los intereses individuales afectados y el interés gubernamental protegido que nuestra jurisprudencia requiere para determinar el proceso de ley debido a un ciudadano ante una actuación gubernamental. Específicamente,

la opinión mayoritaria no toma en consideración el interés legítimo que tiene el Estado en prevenir la construcción inminente de una obra permanente sobre posibles bienes de dominio público.


                                        Liana Fiol Matta
                                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| San Gerónimo Caribe Project, Inc.<br><br>        Peticionario<br><br>            v.<br><br>Administración de Reglamentos y Permisos<br><br>        Recurrida | |
| San Gerónimo Caribe Project, Inc.<br><br>        Recurrido<br><br>            v.<br><br>Administración de Reglamentos y Permisos<br><br>        Peticionaria | CC-2008-132<br><br><br><br>Certiorari (cons.)<br><br><br><br><br><br>CC-2008-208 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 31 de julio 2008

Disiento de la decisión que la mayoría emite en el presente caso, puesto que la doctrina de academicidad, como canon de auto-limitación judicial, nos impide considerar los méritos del mismo. A mi juicio, la mayoría de este Tribunal traza un curso decisorio que incursiona en el ámbito proscrito de la opinión consultiva.

El desarrollo del presente caso a nivel apelativo y la decisión que en el día de hoy anunciamos en el caso *San Gerónimo Caribe Project, Inc., v. E.L.A.,* res. ___ de ___ de __, revelan que no existe una controversia genuina que nos permita expresar criterio sobre la validez de las actuaciones de la Administración de Reglamentos y Permisos

(ARPe) al paralizar los permisos de construcción expedidos a San Gerónimo Caribe Project. Como veremos, los eventos posteriores a la presentación del recurso que nos ocupa han dispuesto de la presente controversia, por lo que nos enfrentamos a un caso académico que está fuera del ámbito de nuestra revisión judicial. Explico.

**I**

La doctrina de justiciabilidad delimita el ámbito de la intervención de los tribunales y determina cuándo y bajo qué circunstancias, los tribunales deben intervenir en un asunto presentado ante su consideración. A su vez, la norma de academicidad forma parte del concepto de justiciabilidad. Un caso es académico cuando no encierra una controversia real o cuando la sentencia que pueda dictarse no tendrá efecto práctico sobre las partes. *E.L.A. v. Aguayo,* 80 D.P.R. 552, 584 (1958). Ausente el elemento de adversidad y en defecto de una controversia real, hemos determinado que los tribunales se deben abstener de considerar un caso en los méritos. *Id.*, *El Vocero v. Junta de Planificación,* 121 D.P.R. 115, 124-25 (1988).

En su esencia, la doctrina de academicidad valida e instrumenta la prohibición de emitir opiniones consultivas. Así, una expresión judicial en el contexto de un caso académico irrumpe en el ámbito de una opinión consultiva, puesto que los tribunales están llamados a resolver controversias reales entre partes adversas.

Hemos definido la opinión consultiva como "la ponencia legal emitida por un tribunal cuando *no tiene ante sí un caso o una controversia justiciable*, y cuyo resultado…, no es obligatorio". *Ortiz v. Panel F.E.I.,* 155 D.P.R. 219, 251 (2001) (cita omitida). Este principio además, evita que los tribunales suscriban decisiones especulativas, puesto que no es la función de los foros judiciales actuar como asesores o consejeros. *Id., Com. De la Mujer v. Srio de Justicia,* 109 D.P.R. 715, 721 (1980).

## II

Como asunto prioritario, es importante advertir que la peticionaria, *San Gerónimo Caribe Project*, inicialmente invocó la jurisdicción de este Tribunal para impugnar la orden de paralización emitida por ARPe el 27 de diciembre de 2007. Dicha orden tenía una vigencia de sesenta días. Presentado el recurso ante este foro, ARPe extendió la paralización por un término adicional de sesenta días. El 28 de febrero de 2008, dejamos sin efecto la orden de extensión de la paralización de los permisos de construcción otorgados a San Gerónimo Caribe Project. *Véase* resolución del 28 de febrero de 2008, en el caso CC-2008-132. Indicamos que ARPe contravino el estado de derecho vigente al extender por sesenta días adicionales la referida orden de paralización puesto que para esa fecha, el Tribunal de Primera Instancia había decretado que los terrenos en los que ubica el proyecto conocido como Paseo Caribe no eran de dominio público. *Id.*

En primer lugar, en vista de que la orden de paralización era de carácter temporero, no hay duda que adviene académico expresar criterios en el presente caso. En este respecto, la mayoría aduce que el 28 de febrero de 2008 sólo paralizamos la orden de extensión de la paralización decretada por ARPe y que por tanto se justifica atender el presente recurso para revocarla. Como indiqué, en dicha fecha dejamos sin efecto la orden de paralización que sólo tenía una vigencia de 60 días. Al momento, entonces, la orden no surte efecto alguno. En vista de ello, es errada la argumentación de la mayoría que pretende defender la pervivencia del carácter justiciable del presente caso, a pesar de que **dicha orden ya no está vigente.** Contrario a lo que aduce la mayoría, nuestra resolución del 28 de febrero de 2008 no constituye un *injunction* permanente. Entiendo, por el contrario, que el hecho que la orden de paralización ya venció, en unión a nuestras expresiones en la resolución del 28 de febrero, denotan que actualmente es inadecuado atender el presente recurso, so pretexto de invalidar dicha orden.

De suyo, el hecho que la orden de paralización dictada por ARPe el 28 de febrero de 2008 venció, justifica desestimar el presente caso por académico. Empero, soy del criterio además, que la solución judicial que hoy anunciamos en el caso *San Gerónimo Caribe Project v. E.L.A. supra,* sobre la titularidad de los terrenos en los que ubica el Proyecto Paseo Caribe, también dispone del presente recurso en el que se impugna la paralización de

los permisos de construcción a base de la controversia sobre la titularidad de los terrenos. Como bien reconoce la mayoría, ARPe decretó la paralización de los permisos debido a que la Opinión del Secretario de Justicia del 11 de diciembre de 2007 levantó una duda sustancial sobre la titularidad de los terrenos. Por tanto, ARPe suspendió los permisos y paralizó las obras mientras se dilucidaba la controversia de titularidad en los tribunales. Es indudable entonces, que la decisión que hoy anunciamos en torno a que los terrenos en controversia no son de dominio público, anula la justificación jurídica utilizada por ARPe para paralizar los permisos de construcción.

El hecho que en el futuro, ARPe tenga la potestad de revisar los permisos otorgados a San Gerónimo a base de error o fraude, no legitima las expresiones de la mayoría, ya que el presente recurso no versa sobre dicho asunto. Como indiqué, en el presente caso se impugnó la facultad de ARPe de intervenir con los permisos de San Gerónimo Caribe Project a base de la duda sobre la titularidad. Además, como bien se deduce del alegato de la parte peticionaria, ésta no cuestionó la facultad de ARPe de revocar sus permisos por error o fraude en su concesión. Su contención se centró en la falta de jurisdicción de la agencia sobre la titularidad de los terrenos. *Alegato de la peticionaria, caso CC 2008-132,* pág. 14. En virtud de ello, nuestra determinación sobre la titularidad necesariamente invalida los fundamentos utilizados por ARPe

para emitir la orden de paralización y dispone de los asuntos aquí planteados.

De igual modo, carece de mérito el argumento de la mayoría a los efectos de que es necesario revocar la sentencia del Tribunal de Apelaciones puesto que en virtud de ésta, ARPe podría investigar si medió fraude o error en la concesión de los permisos. Basta recordar que en el día de hoy hemos resuelto la controversia sobre la titularidad de los terrenos en los que ubica el Proyecto Paseo Caribe. Fundamento, como sabemos, que dio base al procedimiento administrativo ante ARPe. Por tanto, nuestra determinación en el caso *San Gerónimo Caribe Project, Inc., v. E.L.A., supra,* elimina los fundamentos jurídicos por los cuales ARPe inició el procedimiento administrativo que dio pie a la determinación del Tribunal de Apelaciones. Por ello, cualquier decisión futura de ARPE en torno a realizar un procedimiento de revocación de permisos por fraude u error, estaría desvinculada del procedimiento que se impugna en el presente recurso y dicha actuación estaría sujeta a un nuevo proceso de revisión judicial.

En segundo lugar, la mayoría justifica la ausencia de academicidad en el hecho que la Opinión del Secretario de Justicia demuestra que dicho departamento ejecutivo conduce una investigación mucho más amplia sobre el procedimiento de concesión de permisos en el Proyecto Paseo Caribe y que ello no se limita al asunto de la titularidad. Por tanto, reclaman un deber de proteger a San Gerónimo Caribe Project

de procedimientos administrativos ulteriores que se puedan iniciar ante Arpe o ante otras agencias.

Aduce la mayoría que una vez el Secretario de Justicia finalice su investigación, **podría hacer nuevas recomendaciones y** que agencias como ARPe **pueden** iniciar nuevos procedimientos administrativos. Este razonamiento descansa en una serie de suposiciones y especulaciones que denotan el carácter consultivo de las expresiones que hoy la mayoría hoy emite. Evidentemente, es insostenible que la mayoría rechace el planteamiento de academicidad bajo el fundamento que la peticionaria **podría** estar expuesta a ulteriores procedimientos administrativos desvinculados a la titularidad de los terrenos en los que ubica el Proyecto Paseo Caribe. Máxime, cuando ARPe utilizó la controversia sobre la titularidad como justificación para emitir la orden que en este recurso se nos solicita revisar. Adviértase que en el presente recurso tenemos ante nuestra consideración **una actuación concreta de ARPe, es decir, la orden de paralización que se predicó en una duda sobre si la peticionaria es dueña de los terrenos en los que construye el Proyecto Paseo Caribe.** Por tanto, no tenemos jurisdicción para pasar juicio sobre actuaciones futuras que ARPe podría tomar y que además estarían desvinculadas de los límites de la orden de paralización dictada el 27 de diciembre de 2007 y que se extendió el 25 de febrero de 2008.

El razonamiento hipotético de la mayoría ignora además, que bajo el palio de sus reglamentos, ARPe posee

jurisdicción para revisar la validez de los permisos otorgados. Por tanto, la posibilidad de que se reevalúen los permisos en el futuro, por fundamentos que al momento desconocemos, no legitima expresarnos sobre una actuación concreta que ya la agencia realizó. Si ello ocurre, las partes podrán agotar todos los remedios judiciales que tienen a su disposición incluyendo, acudir en su día ante este Tribunal.

Por otro lado, es inaceptable que la mayoría utilice el presente recurso para pasar juicio sobre la política pública expresada por el Secretario de Justicia en su Opinión o sobre la naturaleza de las opiniones del Secretario de Justicia y su efecto vinculante para con las agencias del gobierno central; así como tampoco, sobre las actuaciones que diversas agencias administrativas podrían emprender al amparo de sus poderes delegados. Independientemente del peso jurídico de dicha Opinión y su obligatoriedad, es un error concluir que el presente caso es justiciable debido a las acciones que ARPe pueda tomar en el futuro. De igual forma, no es nuestro lugar emitir directrices que puedan incidir sobre una investigación que el Departamento de Justicia pueda estar realizando, cuando no está ante nuestra consideración la validez de dicha investigación. No debemos, en nuestro celo, opinar para eviscerar las prerrogativas del Secretario de Justicia, aun cuando estimemos que sus actuaciones son claramente desatinadas. Esta justificación, por tanto, es el perfecto

ejemplo de lo que hemos denominado como una opinión consultiva.

En fin, los eventos ocurridos en el trámite del presente recurso dispusieron de la controversia inicial de este recurso. Ante ello, las expresiones de la mayoría no cambian el estado del caso y carecen de todo efecto sobre las partes y sobre el asunto planteado. Disipada la duda sobre la titularidad de los terrenos en los que la peticionaria construye y habida cuenta de que dicha orden venció por sus propios términos, no sobrevive ninguna controversia capaz de ser atendida por este Foro. Por tanto, las determinaciones de la mayoría constituyen una opinión consultiva que no tendrá efecto ninguno en el presente caso.

En virtud de lo anterior, desestimaría por académico el recurso que pende ante nuestra consideración.


                         Anabelle Rodríguez Rodríguez
                              Juez Asociada